Booth, Judge,
delivered the opinion of the court:
The plaintiff contends for an exemption from corporate tax liability, which the Commissioner of Internal Revenue refused to grant. The amount involved is $1,929.00. The tax was imposed and collected by the commissioner under section 1000 of the revenue act of 1918 (40 Stat. 1126), reading as follows:
“ SbctxoN 1000. (a) That on and after July 1,1918, in lieu of the tax imposed by the first subdivision of section 407 of the revenue act of 1916 (1) every domestic corporation shall pay annually a special excise tax with respect to carrying on or doing business equivalent to $1 for each $1,000 of so much of the fair average value of its capital stock for the preceding year ending June 30 as is in excess of $5,000. In estimating the value of capital stock the surplus and undivided profits shall be included; * * * (c) The taxes imposed by this section shall not apply in any year to any corporation which was not engaged in business (or in the case of a foreign corporation not engaged in business in the United States) during the preceding year ending June 30, * *
The tax was collected for the years 1918, 1919, 1920, 1921, and 1922. A refund claim was denied.
The plaintiff corporation was organized under the laws of the State of New York on September 7, 1917, with a capital stock of $60,000.00, divided into 600 shares of common stock of the par value of $100 per share. The certificate of incorporation in the fojlowing language states its objects and purposes, viz:
“ To acquire from the residuary legatees and hold all the real and personal property devised and bequeathed to said residuary legatees under the will of Jane E. Edgar, deceased, and to sell, transfer, mortgage, assign, exchange, and otherwise dispose of any and all of the real and personal property aforesaid, upon such terms as to the board of directors may seem proper, and to receive the proceeds thereof and to distribute the same among the stockholders, after payment of expenses, and to lease and rent the said real property for any term or terms whatsoever, and to receive the rents and income derived from said real and personal property, and to distribute the same among the said stockholders after payment of expenses. To alter, improve, reconstruct, repair, and otherwise manage and maintain the said real and per *421 sonal property, and generally to do and perform any and all other things which may be at any time necessary or convenient, in the judgment of the board of directors, for the proper maintenance and upkeep of the said real and personal property acquired by the corporation as aforesaid.”
The facts agreed upon disclose that Mrs. Jane E. Edgar, a citizen of New York, died testate on March 12, 1895, leaving an estate made up of various parcels of valuable real estate and some personal property. The last will of the decedent, after making certain specific bequests, devised and bequeathed the resjdue of her estate, in trust for the use and benefit of her two children for life, with a provision that upon the death of the survivor the estate should pass in fee to certain named legatees and devisees. The survivor of Mrs. Edgar’s two children died in June, 1917, and the estate descended as mentioned above. In September following, the plaintiff corporation was organized for the express purpose of acquiring from the aforesaid legatees and devisees the property they inherited as above, and thus administering the estate in what the incorporators regarded as a much more advantageous and profitable way than to pursue the established laws for the administration of deceased persons’ estates in the Probate Court of New York. The corporation continued in existence from its organization until April, 1922. During its continuance eight separate parcels of realty came under its management and control, rents were collected, repairs were made, and the property managed and controlled in such a way as to obtain for it the most advantageous price. When safes were made — in some instances for all cash, in others, part cash and mortgages for balance — the cash received was immediately distributed to the stockholders and the mortgages were held by the corporation. Uniformly, when installment payments were received upon mortgages the funds were at once distributed. In September, 1920, a profit of $60.65 was realized from the purchase and sale of certain Victory bonds, and two stock transactions in the same year yielded a total profit of $66.72. The corporation was under the exclusive management of one man, a practicing lawyer, and its overhead expense was nominal. The *422 record shows that the trustees under Mrs. Edgar’s will had leased all the realty, except one parcel, and. these leases extended from three to five years from date. The corporation did not renew the leases upon the expiration of the term. The plaintiff, relying upon the above state of facts, insists that the corporation was not “ carrying on or doing business ” during the period of its existence, within the meaning and intent of the taxing act, and hence ,is entitled to judgment for the amount of the capital-stock taxes paid.
The nature of the capital-stock tax is obvious. It is, as settled by judicial decision too familiar to cite, an excise tax imposed upon the privilege of doing business as a corporation. The plaintiff in this case was prompted to incorporate in view of a situation wherein incorporation offered, at least in the opinion of the stockholders, a distinct advantage and profit over the ordinary course of law applicable to their situation. The corporation came into existence, manifestly, because it enabled the stockholders, the residuary legatees and devisees of Mrs. Edgar’s will, to conserve an estate of considerable proportions, curtail expenses, and provide for expeditious management and disposition in a way and by a method superior to the established laws of the State respecting the administration of deceased persons’ estates and the sale and division of realty owned by tenants in common. To accomplish the desired end indispensably entailed the customary proceedings involved in the sale of land and personal property. Kents were to be collected, some funds of the corporation were invested, and while the detail of activities resembles a process of liquidation, it is to be remembered that that is precisely the purpose of the incorporation, its one object to the discharge of which all business activities were solely directed. The corporation came into being to manage, control, and dispose of this estate; it had no purpose to continue longer, and while so engaged did carry on and complete all the necessary business activities for which it was distinctly incorporated. Surely this was a privilege. Clearly it was the exercise of a legal option to take from the channels of ordinary and customary legal procedure a considerable estate in lands and personal property, *423 erect a legal entity, and thereby accrue an advantage which ownership in common did not afford those entitled to the property. The fact that overhead expense was nominal, proven profits from investments small, and business activities not especially exacting, in nowise militates against the rule. If the corporation was pursuing the object for which it was organized and doing all the essential things to accomplish that object, it can not claim a classification of an inactive corporation, doing no more than liquidating its assets. It is not the amount of business done which signifies, although in this case it is apparent that the corporation did conserve and save to the estate expenses which otherwise it would have incurred, and likewise enabled the stockholders to await a propitious moment for sales of real estate, as well as enable the corporation to collect rents, maintain the property, and make small investments. ' To do all this we think compelled a degree of business activity within the meaning of the revenue law.
The cases reflecting the various phases of controversies similar to the one in suit are found in the following citations: Von Baumbach v. Sargent Land Co., 242 U. S. 503; Zonne v. Minneapolis Syndicate, 220 U. S. 187; United States v. Emery, Bird, Thayer Realty Co., 237 U. S. 28; McCoach v. Minehill Railroad Co., 228 U. S. 295; Chevrolet Motor Co. v. United States, decided by this court November 7, 1927, 64 C. Cls. 211; Edwards v. Chile Copper Co., 270 U. S. 452; Conhaim Holding Co. v. Willcuts, D. C. Minn., August 10, 1927, 21 Fed. (2d) 91, a case strikingly similar to the one in suit.
The petition will be dismissed. It is so ordered.
Moss, Judge; Graham, Judge; and Campbell, Chief Justice, concur.
GreeN, Judge, took no part in the decision of this case.