Graham, Judge,
delivered the opinion of the court:
This is a suit to secure the refund of certain capital-stock taxes paid by the plaintiff for the years ending June 30,1922, 1923, 1924, and 1925. The taxes were assessed and collected upon the theory that during these taxable years the plaintiff was “ carrying on or doing business ” within the meaning of *705 section. 1000[1] of the revenue act of 1921, 42 Stat. 227, 294, and section 700 [1] of the revenue act of 1924, 43 Stat. 325.
One F. H. Wigton, prior to the year 1914, owned 2,666 acres of coal land upon which were a derrick, miners’ houses, and other buildings necessary to the conduct of mining operations, and he also owned the Morrisdale Coal Company, a coal operating company. In 1914 the said Wigton organized and had incorporated the plaintiff corporation, under the laws of the State of Pennsylvania, with a capital stock of $5,000, and the declared purpose of “purchasing, holding, leasing, and selling real estate.” Immediately after its organization the said Wigton conveyed title to the said coal lands to plaintiff and received therefor in payment $200,000 in its bonds and all of its capital stock of $5,000.
It will be seen, therefore, that the said Wigton, while owning all of the stock of the Morrisdale Coal Company, at the same time owned all of the stock and the bonds of the plaintiff ; that is to say, both companies were owned by the same person, and for all practical purposes this person was in •each case the company. Immediately after it was incorporated the plaintiff leased to the Morrisdale Coal Company — that is to say, Wigton in effect leased to himself- — the coal lands which had been conveyed to the plaintiff, and also continued certain existing leases then held by the Morris-dale Coal Company. The latter conducted a mining business, the plaintiff did not, and it will be readily seen had *706 no occasion for doing so, as Wigton was already, through the Morrisdale Coal Company, conducting the coal business.
Wigton, in the management of the two companies, arranged that the plaintiff should get its income from the rents and royalties received from these leases and from its profits and interest on the securities which it held. It arranged that the Morrisdale Coal Company should pay for certain repairs to the buildings and apparatus on the lands, while the plaintiff paid for the greater part of the capital improvements and also taxes on the land, the bookkeeping and distribution of work in each case being arranged, of course, by Wigton, the owner of both companies. The officers of the two companies were the same and were paid as officers of the Mor-risdale Coal Company. The plaintiff did not maintain separate offices, but conducted its business, held its meetings and kept its accounts in the offices of the Morrisdale Coal Company.
The plaintiff owned a store building on the premises, and it leased this to another company, the Morrisdale Supply Company, the stock of which was also all owned by Wigton. Advances were made in 1925 and 1926 to the Morrisdale Coal Company by the plaintiff, together with certain insurance money, to enable the Morrisdale Coal Company to rebuild the store building which had been burned down, and the Morrisdale Coal Company on several occasions prior to July, 1921, advanced money to plaintiff in order to enable it to pay off its bonds.
The plaintiff paid no dividends during its existence, but paid off its bonds ($200,000), and built up by 1926 a profit and loss account of over sixty-one thousand dollars, which included over fifty-two thousand dollars in bonds. Plaintiff’s capital account showed an average real estate account of $85,000 and coal lands of an estimated value of from $850,000 to $500,000 in 1914, and the only liability on the capital side of the account was the capital stock of $5,000 and $126,738.10 carried as paid-in surplus.
On several occasions the plaintiff sold at a profit some of the bonds which it held for investment and maintained a working capital of from $1,000 to $9,000, and paid taxes each *707 year on its real estate, amounting to about $800. It paid its capital stock taxes of $659 for the years stated above, namely, June 80,1922,1923,1924, and 1925. Plaintiff for these years tendered to the Government its capital-stock returns, arid the tax was assessed according to the returns, and paid. The last payment was made for the year ending June 30, 1925. On or about July 29, 1925, plaintiff filed with the collector at Philadelphia a claim demanding the refund of $659, the total tax paid for these years, on the ground that it was not doing business within the meaning of the statute, and therefore not subject to a capital-stock tax.
It will be seen from the foregoing that the plaintiff and the Morrisdale Coal Company, when their corporate garments are pulled aside, reveal Wigton as the person doing business in each case. He owned both companies; their offices were in the same place; they transferred money from one to the other as might be necessary, and were undoubtedly two parts which made up one operation and one concern. It is perfectly clear that the plaintiff was doing business and assisting in the coal operations of the Morrisdale Coal Company. But, aside from that, were it standing alone and not intimately connected with the operation of the Morrisdale Coal Company, it would be within the meaning of the statute. We hold that it was carrying on and doing business within the meaning of the statute, and was right originally when it rendered its returns each year for capital-stock taxes and paid them.
It is clear that under the provisions of the statute each case must rest upon its own bottom and its own facts. There can be no rule of general application laid down to cover the language of the statute “ carrying on and doing business,” except that no particular amount of business is required in order to bring a party within the terms of the statute. See Von Baumbach v. Sargent Land Co., 242 U. S. 503, 517. Compare the following cases: Chevrolet Motor Co. v. United States, 64 C. Cls. 211 (certiorari denied); Edgar Estates Corporation v. United States, 65 C. Cls. 415; Conhaim Holding Co. v. Willcuts, 21 Fed. (2d) 91; Flint v. Stone Tracy *708 Co., 220 U. S. 107; Edwards v. Chile Copper Co., 270 U. S. 452; and Harmar Coal Co. v. Heiner, 26 Fed. (2d) 729.
Plaintiff is not entitled to recover and its petition should be dismissed. It is so ordered.
SiNNOTT, Judge; GeeeN, Judge; Moss, Judge; and Booth, Chief Justice, concur.

 Section 1000 of the revenue act of 1921 provides as follows:
(a) On and after July 1, 1922, in lieu of the tax imposed by section 1000 of the revenue act of 1918—
(1) Every domestic corporation shall pay annually a special excise tax with respect to carrying on or doing business equivalent to $1 for each $1,000 of so much of the fair average value of its capital stock for the preceding year ending June 30 as is in excess of $5,000. In estimating the value of capital stock the surplus and undivided profits shall be included.
£ % * fc >jc # #
(b) The taxes imposed by this section shall not apply in any year to any corporation which was not engaged in business (or, in the ease of a foreign corporation, not engaged in business in the united States) during the preceding year ending June 30, nor to any corporation enumerated in section 231, nor to any insurance company subject to the tax imposed by section 243 or 246.
Section 700 of the revenue act of 1924 is couched in identical terms with the .above set-out provision of the revenue act of 1921.