## PITTSBURGH, C., C. & ST. L. R. CO. v. UNITED STATES.

### No. 45936.

Court of Claims.

Dec. 1, 1947.

562

Caesar L. Aiello, of Washington, D. C. (Theodore K. Warner, Jr., and William R. Bready, III, both of Philadelphia, Pa., and McKenney, Flannery & Craighill, of Washington, D. C., on the brief) for plaintiff.

John A. Rees, of Washington, D. C., and Sewall Key, Acting Asst. Atty. Gen. (Robert N. Anderson and Andrew D. Sharpe, both of Washington, D. C., on the brief), for defendant.

Before JONES, Chief Justice, and HOWELL, MADDEN, WHITAKER and LITTLETON, Judges.

JONES, Chief Justice.

This case involves a federal capital stock tax for the taxable year ending June 30, 1938.

The question is whether plaintiff was carrying on or doing business within the meaning of Section 601 of the Revenue Act of 1938, 52 Stat. 447, 26 U.S.C.A.Int.Rev. Acts, page 1139, during any part of such year.

Subdivision (a) of Section 601 is as follows: "(a) For each year ending June 30, beginning with the year ending June 30, 1938, there is hereby imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1 for each $1,-000 of the adjusted declared value of its capital stock."

The essential facts are set out in the findings.

The plaintiff filed a capital stock tax return for the year in question, declaring the value of its capital stock to be $84,860,000. It claimed exemption from such tax upon the basis of an accompanying affidavit, which set out various facts in respect to the organization, operation and status of the corporation during the period involved.

The Commissioner of Internal Revenue denied the claim for exemption, and accordingly levied an additional assessment in the sum of $84,860, plus statutory interest, which was paid on November 16, 1939, in the total sum of $91,065.23. A timely claim for refund was rejected, and plaintiff seeks a recovery of this amount.

Plaintiff was organized under a merger agreement of five existing railway corporations in the year 1916 for the purpose of operating and until January 1, 1921, did operate as one railway the consolidated lines approximately 2,000 miles in length.

In the early part of 1921 the plaintiff and the Pennsylvania Railroad Company entered into a lease agreement. By the terms of the agreement plaintiff leased to the Pennsylvania Railroad Company all its property, rights, privileges and franchises for a term of 999 years, with a proviso that "nothing herein contained shall operate to grant or demise the franchise to be a corporation possessed by the Lessor, or any other right, privilege or franchise which is or may be necessary to fully preserve the corporate existence or organization of the Lessor."

The Pennsylvania Railroad Company agreed to pay plaintiff (a) a fixed annual rental; (b) a sufficient sum each year to pay the interest and sinking fund obligations upon lessor's bonded or other indebtedness and upon any later bonds which might be issued with lessee's approval; and (c) a sufficient sum to enable plaintiff to maintain its corporate organization, including reasonable organization, administration and legal expenses. The lessee was to pay all taxes and assessments levied against the property, all amounts required under plaintiff's leases with certain sublessor companies, and all claims arising out of the operation of the leased properties.

The lessee was to keep the demised equipment and premises in thorough repair, working order and condition, so that the business of the demised railroad would be preserved and developed and further growth of such business provided for. It was provided that any real and personal property of the lessor which in the opinion of the lessee was not necessary to the continued and prospective use of the leased railroads might with the consent of the lessor, evidenced by a resolution of its board of directors, be sold from time to time by the lessee, who agreed to receive the pro-

ceeds of any sale and apply the same, with due regard to any mortgages thereon, to betterments or improvements upon or additions to the leased railroads and property of the lessor. The lessee agreed to furnish the money for improvements, building, equipment and facilities, but the cost of such improvements was to constitute an indebtedness of the lessor. It was further provided that the lease should terminate upon the failure of the lessee to pay the agreed rent or any part thereof if such default continued for thirty days, and that the lease would likewise terminate upon the failure of the lessee to keep any of the other covenants and agreements, if such default continued for ninety days after notice thereof given in writing by the lessor.

The lease has been in effect since its execution. Both parties have at all times complied with its terms.

Plaintiff maintained its principal office at Philadelphia, Pennsylvania, and other offices in some four different states. These offices were located in the offices of the Pennsylvania Railroad, and all work performed by employees of the Pennsylvania Railroad without compensation from plaintiff. The plaintiff at all times had a full complement of officers, such as are ordinarily had by railroad companies, including president, vice presidents, secretary, assistant secretary, treasurer and assistant treasurer. The individuals who held these offices held the same offices with the Pennsylvania Railroad, with one or two exceptions. Plaintiff had fifteen directors, of whom ten were also directors of the Pennsylvania Railroad. Except for the officers and directors, plaintiff had no employees and paid no salaries, all the work of plaintiff being performed by the officers and employees of the Pennsylvania Railroad Company.

During the fiscal year ending June 30, 1938, plaintiff's stockholders had one meeting, and its board of directors had four meetings. The only business transacted at the stockholders' meeting was the approval of the annual report of its president and board of directors, and the election of a board of directors. At the directors' meetings business was transacted as follows:

(a) Approved reports of sales of real estate involving consideration of not to exceed $10,000 in any one sale, made in accord with a resolution of plaintiff's board of directors theretofore passed authorizing the president or vice president of plaintiff company to approve sales of real estate not exceeding $10,000 in value upon such terms and for such consideration as in the judgment of the president and vice president were just and reasonable, and to execute such deeds and instruments in connection therewith as might be necessary, without further action by the board;

(b) Approved expenditures for additions, betterments and improvements made by the Pennsylvania Railroad Company;

(c) Approved charges and credits to plaintiff's capital account because of additions, abandonments, retirements or other adjustments in connection with the road, equipment, and other parts of the leased premises;

(d) Approved advances by the Pennsylvania Railroad Company for the acquisition of right-of-way and for other purposes as required under the lease;

(e) Approved agreements entered into by the Pennsylvania Railroad Company which gave the Sanitary District of Chicago permission to construct, maintain and operate a sewer under plaintiff's property, and also an easement given by the lessee.

A complete set of books was maintained by plaintiff, in which was recorded the various transactions affecting plaintiff as lessor, including transfers of property, additions to or reductions in the capital accounts, changes in capital stock and bonded indebtedness, dividend and interest accounts and other accounts which ordinarily appear in a railroad accounting system.

After January 1, 1921, plaintiff did not run any railroad train, sell any transportation, make any applications to the Interstate Commerce Commission for the establishment of freight or passenger rates or otherwise engage in operating these railway lines. Plaintiff was not in liquidation, but remained in existence as required by the lease agreement and engaged in the activities required under the lease agreement and by reason of its corporate existence.

The plaintiff insists it was not doing business within the meaning of the taxing statute. It cites a number of cases, including McCoach v. Minehill and Schuylkill Haven R. R. Co., 228 U. S. 295, 33 S.Ct. 419, 57 L.Ed. 842; North Pennsylvania R. Co. v. Rothensies, D. C., 45 F.Supp. 486; Mahoning Coal R. Co. v. Higgins, D. C., 57 F. Supp. 717.

The defendant insists that the activities of the lessor constituted doing business within the meaning of the statute, and cites numerous cases, including Edgar Estates Corporation v. United States, 65 Ct.Cl. 415, 422; Flint v. Stone Tracy Co., 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas. 1912B; Wisconsin Cent. R. Co. v. United States, 41 F.2d 870, 70 Ct.Cl. 203, 231.

It is not necessary to discuss in detail these and other cases cited by the respective parties.

The upshot of these decisions is that each case must stand on its own bottom; that no particular volume of business is necessary and that each case must be decided separately upon the basis of whether the facts of the case constitute carrying on or doing business within the meaning of the statute.

The plaintiff relies largely upon the decision of the Supreme Court in the Minehill case, supra. The facts in that case are in some respects similar to the facts in the case at bar. Both cases involve the capital stock tax levied upon the lessor company in connection with leased premises and facilities and the operation of the leased railway. In the Minehill case the plaintiff was held not subject to the capital stock tax. However, in the decision in that case the court uses the following language, 228 U.S. at page 305, 33 S.Ct. at page 423, 57 L.Ed. 842: "It should be mentioned that there is nothing in the record to show that during the taxing years in question the company exercised its power of eminent domain, or put in force any other special corporate power, in aid of the business of the lessee. We therefore do not pass upon the question whether, if it should do so, it would be taxable under the act in question."

It will be seen then that by express language the court narrowed and limited the effect of its decision.

Was the lessor merely a "shell corporation" or was it doing business?

The question is somewhat difficult, but when the entire record is considered we have concluded that plaintiff was doing business within the meaning of the statute.

■ As a general rule a corporation of the type involved here is exempt if its activities are limited to owning and holding property, collecting the income therefrom and distributing it. Von Baumbach v. Sargent Land Co., 242 U. S. 503, 517, 37 S.Ct. 201, 61 L.Ed. 460.

The lessor's activities were substantially more than this.

Plaintiff was not only required to maintain a corporation but to exercise its powers in aid of the business of the lessee. It maintained its own board of directors which had four meetings during the year involved. Its approval in writing was required by the terms of the lease before a sale of any of the property could be made by the lessee. This required some discretion in protecting the rights of the respective corporations. It approved expenditures for additions, betterments and improvements to the leased properties. It approved charges and credits to plaintiff's capital accounts made necessary by additions, abandonments and retirements. It approved advances for the acquisition of right-of-way. It approved agreements permitting the Chicago District to construct and maintain sanitary improvements, and the granting of an easement for other purposes. It might with the approval of the lessee acquire other lines of railway to come under the lease.

There were two forfeiture provisions, (1) default, on the part of lessee, in the payment of rent for a period of thirty days, and (2) failure on the part of the lessee to keep and perform any of the covenants and agreements contained in the lease for a period of ninety days. The instrument of lease provided that "in either and every such case, it shall be lawful for the Lessor, its successors or assigns, at its or their own option, to declare this lease forfeited and ended, and thereupon to enter into and upon the railroads and premises hereby demised, and any and every part thereof, and

remove all persons therefrom; and thereupon and from thenceforth, the said railroads and property hereby demised, with all appurtenances thereof, and all additions and improvements which shall have been made to the same, shall revert to the Lessor, to have, hold, possess and enjoy as of its first or former estate therein, as fully and completely, in all respects, as if this lease had not been made; and upon such entry for nonpayment of rent or breach or nonperformance of any covenant or agreement herein contained to be by the Lessee observed or performed, all the estate, right, title, interest, property, possession, claim and demand whatsoever of the Lessee, its successors or assigns, in or to the said railroads and property, or any part thereof, shall absolutely cease, terminate and become and be void and wholly extinguished, anything hereinbefore contained to the contrary in anywise notwithstanding."

Certainly the requirements of the second forfeiture provision necessitated constant vigilance on the part of lessor's officers if the rights of plaintiff's stockholders were to be fully protected.

True, ten of the fifteen directors of the lessor corporation were also directors of the Pennsylvania Company, but five of them were not. It is also true that the vast majority of the stock of the lessor was owned by the lessee, but a part of it was not, and it was necessary that the rights of the minority stockholders be preserved.

These duties were not perfunctory. It seems axiomatic that if the lessor directors had paid no attention to how the lessee was caring for lessor's properties and had permitted the lessee company to dispose of lessor's property which lessee regarded as unnecessary without regard to its price or value, the minority stockholders might have had a basis for action to protect their rights.

There must be a reason for wanting to maintain two corporations over the long lease period. Naturally income taxes would be affected by the disposition of property owned by the lessor company as well as by replacement and discarding of old properties.

The capital tax levy is comparatively small. It is levied on the privilege of doing business. We are unable to escape the conclusion that plaintiff in the peculiar circumstances of this case was doing business under the broad terms of the capital stock statute. The petition is dismissed.

It is so ordered.

HOWELL, MADDEN, WHITAKER, and LITTLETON, JJ., concur.