**STANLEY SECURITIES CO. v. UNITED STATES.**

No. H–446.

Court of Claims.
March 3, 1930.

Bernhard Knollenberg, of New York City (Lord, Day & Lord, of New York City, on the brief), for plaintiff.

Arthur J. Iles, of Indianapolis, Ind., and Herman J. Galloway, Asst. Atty. Gen., for defendant.

Before BOOTH, Chief Justice, and WILLIAMS, LITTLETON, GREEN, and GRAHAM, Judges.

WILLIAMS, Judge.

The plaintiff in this suit seeks to recover $9,897, capital stock taxes, with interest thereon, assessed against it for the taxable fiscal years of 1924–25 and 1925–26.

The sole question to be determined is whether or not the plaintiff during the years in question was a corporation "carrying on or doing business" within the meaning of section 700 of the Revenue Act of 1924, 43 Stat. 325 (26 USCA § 223 note), which reads as follows:

"(a) On and after July 1, 1924, in lieu of the tax imposed by section 1000 of the Revenue Act of 1921—

"(1) Every domestic corporation shall pay annually a special excise tax with respect to carrying on or doing business, equivalent to $1 for each $1,000 of so much of the fair average value of its capital stock for the preceding year ending June 30 as is in excess of $5,000. In estimating the value of capital stock the surplus and undivided profits shall be included;

"(2) Every foreign corporation shall pay annually a special excise tax with respect to carrying on or doing business in the United States, equivalent to $1 for each $1,000 of the average amount of capital employed in the transaction of its business in the United States during the preceding year ending June 30.

"(b) The taxes imposed by this section shall not apply in any year to any corporation which was not engaged in business (or, in the case of a foreign corporation, not engaged in business in the United States) during the preceding year ending June 30, nor to any corporation enumerated in section 231, nor to any insurance company subject to the tax imposed by section 243 or 246."

The Stanley Rule & Level Company was organized under the laws of the state of Connecticut in 1854, and had its main offices and place of business at New Britain in said state. It engaged in the business of manufacturing and selling hardware from the time of its organization until the year 1920, when it sold its plant and business to the Stanley Works, Inc., also a Connecticut corporation. The plaintiff was duly incorporated under the provisions of a joint resolution adopted by the Senate and the House of Representatives of the state of Connecticut, and approved May 11, 1903.

Shortly after selling its plant and business to the Stanley Works, a company engaged in the same general line of business as that of the plaintiff, the name of the Stanley Rule & Level Company was by an act of the Senate and House of Representatives of the state of Connecticut changed to the Stanley Securities Company, and by its new name the plaintiff corporation was authorized to exercise all the rights, powers, and privileges granted by its original charter, and it was also authorized to buy, hold, sell, and deal in real estate, corporate, municipal, government, and other securities and interests therein. The plaintiff from the date on which it received its new charter has functioned as an investment corporation, holding, selling, investing, reinvesting the capital and assets of such corporation, and distributing the profits accruing to its stockholders.

The plaintiff company received $5,800,000 in preferred stock of the Stanley Works in exchange for its plant and business. It also had on hand at the time of such sale and transfer cash and securities in the amount of $4,200,000, making its assets at the time it entered business as an investment company $10,000,000.

Its outstanding stock had a par value of $2,000,000. At the time the plaintiff changed the character of its business from that of a corporation manufacturing and selling hardware to that of an investment company, it gave its stockholders the option of retaining their stock holdings in the Stanley Securities Company or accepting in exchange for their stock cash at the book value thereof, or of liquidating their stock by accepting their pro rata shares of the preferred stock of the Stanley Works and cash for the balance. About nine-twentieths of the plaintiff company's capital stock was retired as a result of this option, leaving its capital stock $1,100,000 and assets and surplus to the amount of $5,500,000.

Since receiving its new charter in 1921, the plaintiff has carried on the business of collecting dividends and interest on the securities owned by it, marketing such securities from time to time, and reinvesting the funds derived therefrom in desirable securities, and in distributing to its shareholders, as its board of directors authorized, the profits and income received from the business.

The plaintiff corporation had a board of directors consisting of seven members. Five directors' meetings were held each year, four of which were regular quarterly meetings. At the quarterly meetings of the board of directors, the sale of securities held and owned by the plaintiff were discussed and determined upon, also the reinvestment of funds received from such sales in other securities. The character and value of the securities held by the plaintiff were scrutinized and appraised by the directors at their quarterly meetings, and such securities as were deemed of doubtful or weakened value were ordered to be disposed of and more desirable securities purchased with the funds realized.

The fifth meeting of the directors was an annual meeting held for the election of officers, which followed immediately after the election of directors at the annual stockholders' meeting. In addition to its board of directors the plaintiff corporation had a president, vice president, treasurer, and secretary. The duties of the president, who has been abroad most of the time since 1924, have been nominal, although he keeps in touch with the corporation's activities through monthly reports and gives advice as to the management. The treasurer, Mr. Frank G. Vibberts, who is president of the New Britain Trust Company and secretary of the Burritt Mutual Savings Bank, is more active in the corporation's business and more responsible for its management than any other official. He draws a salary of $2,000 per year, and is charged with the duty of investing the plaintiff's money. He receives a daily report of the company's business, keeps in close touch with the securities market, consults local and New York brokerage houses, and makes careful examination at all times of the plaintiff's holdings and of its sales and purchases of securities.

It is true, as contended by the plaintiff, that neither Mr. Vibberts, the treasurer, nor other officers of the plaintiff corporation go often to the plaintiff's offices, and do not devote a great part of their time to its business. They do, however, devote sufficient time to the management of plaintiff's business to properly take care of its affairs and to assure the profitable and advantageous handling of its properties.

This was the character of the activities of the plaintiff corporation for the taxable years of 1924-25 and 1925-26.

The question to be determined is whether or not these activities constitute the "carrying on or doing business" within the meaning of the Revenue Act of 1924.

■ The capital stock tax is an excise tax laid on the privilege of doing business in a corporate capacity with the advantages and privileges inherent in that form of organization. Edgar Estates Corporation v. United States, 65 Ct. Cl. 415; Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312.

The decision of whether a corporation is carrying on business within the meaning of the corporation tax law must depend in each instance on the particular facts before the court; no particular amount of business is required.

The fair test to be derived from a consideration of all of them is between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails and doing only the acts necessary to continue that status and one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain and such activities as are essential to those purposes. Von Baumbach v. Sargent Land Co., 242 U. S. 503, 517, 37 S. Ct. 201, 61 L. Ed. 460.

"If the corporation was one that Congress had power to tax in this way, it is hard to say that it is not within the taxing acts. It was organized for profit and was doing what it principally was organized to do in order to realize profit. The cases must be exceptional, when such activities of such corporations do not amount to doing business in the sense of the statutes. The exemption 'when not engaged in business' ordinarily would seem pretty nearly equivalent to when not pursuing the ends for which the corporation was organized, in the cases where the end is profit." Edwards v. Chile Copper Co., 270 U. S. 452, 46 S. Ct. 345, 346, 70 L. Ed. 678.

In Edgar Estates Corporation v. United States, supra, this court had before it a case where the heirs of a deceased person, in order to more advantageously hold and dispose of decedent's property, formed a corporation to take title, manage the property, sell the same, and pay out the proceeds. In

holding that the corporation so formed was "carrying on and doing business" within the meaning of the statute, the court said:

"The nature of the capital-stock tax is obvious. It is, as settled by judicial decision too familiar to cite, an excise tax imposed upon the privilege of doing business as a corporation. The plaintiff in this case was prompted to incorporate in view of a situation wherein incorporation offered, at least in the opinion of the stockholders, a distinct advantage and profit over the ordinary course of law applicable to their situation. The corporation came into existence, manifestly, because it enabled the stockholders, the residuary legatees and devisees * * * to conserve an estate of considerable proportions, curtail expenses, and provide for expeditious management and disposition in a way and by a method superior to the established laws of the State respecting the administration of deceased persons' estates and the sale and division of realty owned by tenants in common. * * * The corporation came into being to manage, control, and dispose of this estate; it had no purpose to continue longer, and while so engaged did carry on and complete all the necessary business activities for which it was distinctly incorporated. Surely this was a privilege. Clearly it was the exercise of a legal option to take from the channels of ordinary and customary legal procedure * . * * estate in lands and personal property, erect a legal entity, and thereby accrue an advantage which ownership in common did not afford those entitled to the property. The fact that overhead expense was nominal, proven profits from investment small, and business activities not especially exacting, in nowise militates against the rule. If the corporation was pursuing the object for which it was organized and doing all the essential things to accomplish that object, it cannot claim a classification of an inactive corporation, doing no more than liquidating its assets."

We think what was said by the court in the case just cited is entirely applicable to the instant case. The plaintiff, as a corporation, had for many years been engaged in the business of manufacturing and selling hardware. In 1920 it sold its business, including its plant, to another corporation, and discontinued its business in that respect entirely. It did not, however, surrender its charter and cease to exist as a corporate entity. It proceeded to have its charter amended, changed its name from the Stanley Rule & Level Company to the Stanley Securities Company, and was granted authority "to buy, hold, sell, and deal in real estate, corporate, municipal, Government, and other securities and interests therein." With the corporate authority with which it was invested by its amended charter, the plaintiff assumed the control and management of the securities, cash, and other assets belonging to the plaintiff company of a value of several million dollars. It bought and sold securities, declared and paid dividends to its stockholders, maintained business offices, held regular meetings of its board of directors, paid salaries to its president, vice president, and treasurer, and engaged in such activities as characterize ordinary investment corporations.

In view of these facts, we think it cannot properly be classified and held to be other than a corporation "carrying on or doing business" within the provisions of section 700 of the Revenue Act of 1924 (26 USCA § 223 note).

The taxes in question were properly and legally assessed. The Commissioner of Internal Revenue was correct in denying plaintiff's claim for refund.

Plaintiff's petition should be, and is hereby, dismissed. It is so ordered.

BOOTH, Chief Justice, and LITTLETON, GREEN, and GRAHAM, Judges, concur.