## BROOKLYN TRUST CO. v. CORWIN, Collector of Internal Revenue.

District Court, E. D. New York.
July 26, 1933.

Cullen & Dykman, of Brooklyn, N. Y. (Francis L. Durk, of Brooklyn, N. Y., of counsel), for plaintiff.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (L. H. Baylies, of Washington, D. C., of counsel), for defendant.

INCH, District Judge.

This is an action at law. A jury was duly waived. The action is brought by plaintiff, Brooklyn Trust Company, to recover a stamp tax claimed to have been unlawfully imposed. The tax was paid, under protest, on August 2, 1932, and the amount sought to be recovered is $8,752.55 with interest.

It was imposed pursuant to Schedule A, subd. 2, title 8, of the Revenue Act of 1926 (44 Stat. 101, 26 USCA § 901, Schedule A (2), which is as follows: "2. Capital stock, issue: On each original issue, whether on organization or reorganization, of certificates of stock, or of profits, or of interest in property or accumulations, by any corporation, on each $100 of face value or fraction thereof, 5 cents: Provided, That where a certificate is issued without face value, the tax shall be 5 cents per share, unless the actual value is in excess of $100 per share, in which case the tax shall be 5 cents on each $100 of actual value or fraction thereof, or unless the actual value is less than $100 per share, in which

case the tax shall be 1 cent on each $20 of actual value, or fraction thereof."

This stamp tax was imposed on "Certificates of Ownership," under an indenture of trust, dated April 22, 1929, and covers the period from April 22, 1929, to June 1, 1932.

The form of this certificate of ownership is as follows:

"Certificate of Ownership

"Brooklyn Trust Company Composite Fund "Series A

"This is to certify that Brooklyn Trust Company has received from itself as Trustee under an agreement with ...... dated ...... the sum of ...... Dollars ($—) to be deposited in its Composite Fund—Series A–upon all the terms and conditions specified in a Declaration of Trust executed by it and bearing date April 22nd, 1929, which said sum entitles the owner and holder of this certificate to a participating interest in the Composite Fund aforesaid to the extent of ...... units of the face value of $100 each.

"The terms upon which this certificate shall be valued, redeemed or assigned are fully set forth in the Declaration of Trust aforesaid, the original of which is lodged with Brooklyn Trust Company at its principal office, 177 Montague Street, Borough of Brooklyn, City of New York, and copies of which are available upon request to all persons beneficially interested hereunder.

"In witness whereof, Brooklyn Trust Company has caused this Certificate to be signed by one of its officers thereunto duly authorized and its corporate seal to be hereunto affixed, this ——— day of ———, 19—.

"Brooklyn Trust Company,
"By ......,
"[Seal]      Vice-President Assistant Secretary."

On the back of certificate:

"Assignment

"For and in consideration of the sum of ...... Dollars ($—), the receipt of which is hereby acknowledged, the undersigned, owner and holder of this Certificate hereby assigns to Brooklyn Trust Company as Trustee under an agreement with ...... dated ......, all of its right, title and interest in and to this Certificate of Ownership and the Composite Fund therein described.

"Brooklyn Trust Company, as trustee under an agreement with ...... dated ......
......
"By ......
"[Seal] Vice-President Assistant Secretary."

The government has waited, substantially, three years, with full knowledge of the situation, before attempting to assess this tax In addition, the brief statement of the conceded facts, which will hereafter be made, will show that in now assessing such tax the Commissioner reverses his previous ruling which ruling was in accordance with the construction and claim here made by plaintiff.

The direct issue is as to the right to impose this stamp tax, but a much more serious question is also involved.

Congress has defined the term "corporation" contained in title 1, section 2 (a), subdivision 2, of the Revenue Act of 1926, 26 USCA § 1262 (a) (2), when used in that act, as follows: "(2) The term 'corporation' includes associations, joint-stock companies, and insurance companies."

This definition was carried, without change, into the Revenue Act of 1928 (section 701 (a) (2) Revenue Act of 1928, 45 Stat. 878, 26 USCA § 2701 (a) (2).

Two questions therefore are presented. The immediate question, as above stated, being whether or not the said "Certificates of Ownership" are "certificates of stock or of profits or of interest in property or accumulations of any corporation." The second and more serious question is whether or not the "Composite Fund trust" created by plaintiff, and to which this certificate of ownership relates, was in fact an "association" so as to bring it within the definition or inclusion of the term "corporation" as above provided by Congress.

As the decision of the court, in this action, must take the place of a verdict of the jury, findings of fact and conclusions of law will be necessary, although there appears to be no substantial dispute as to the facts involved. It is therefore deemed unnecessary to do more, in this decision, than to briefly outline the situation.

The plaintiff is a bank and trust company, duly incorporated under the laws of the state of New York, and has been such since 1866, the date of its incorporation. It bears a high reputation for integrity and stability, and has maintained this reputation through good and bad times. It is trustee of a large number of individual trusts, reposed in it by agreement or will, some of which are large and some small. The duty imposed upon it, as such trustee, to invest and reinvest a trust fund, constantly met with the inability, in cases of small trusts, to perform this duty to its complete satisfaction because of the necessary overhead cost and smallness of the in-

vestment. The desired "diversity" of investment was lacking.

Consequently, in 1929, the trust company formulated a plan which we will call the "Composite Fund" to afford the settlors of trusts, by deed or by will, a medium by which relatively small sums of money could be invested in diversified securities without delay, without undue expense, and under conditions which would permit of ready liquidation of the investment in the event the trust fell in.

Of course, the trust company also continued, in many cases, to invest, separately, funds of a trust and the proof shows that as trustee it has not automatically invested the funds of all trusts in the "Composite Fund." It was deemed advantageous, however, from the standpoint of any trust estate to extend the established form of trust service in such manner as to procure the investment advantages above referred to where the settlor of the trust so desired and agreed.

The plan, therefore, which was put into operation, consisted in the trust company executing a "Declaration of Trust" creating a fund designated "Brooklyn Trust Company Composite Fund, Series A."

According to Mr. Thirkield, vice president of the plaintiff, and associated exclusively with the trust department of plaintiff, it was felt that this providing of some "means," whereby a trust fund of an individual trust could be "commingled" and invested as a group, would meet both this need and the repeated requests of settlors. Without the consent of the makers of the trust, there was and could be no authority to "commingle" their trust fund. In fact, such "commingling" was distinctly prohibited without such consent.

It was necessary, therefore, to have such authority and consent by agreement. To avoid long and involved agreements, this plan of declaration of trust was arrived at. This declaration of trust is referred to in the separate trust agreements where the grantor or the maker was of the opinion that it would be advantageous to allow the trust to be invested in the fund. In other words, permission was expressly given the trustee of the individual "trust" to "commingle" the individual trust fund with other trust funds in the "Composite Fund."

This seems to me to be but an extension of the trust service.

When the plan was finally in shape, it was duly submitted to the superintendent of banks of the state of New York, who, in turn, submitted it to the Attorney General of the state, for his opinion. These officials consid-ered the plan simply a legitimate exercise of the powers already possessed by plaintiff as a trust company, existing under the laws of the state of New York.

Thereafter (in 1929), it was submitted to the Commissioner of Internal Revenue. He also ruled, in substance, that the "Composite Fund" plan was merely supplementary to an extended trust service then being given by the Brooklyn Trust Company, in that, it permits the "commingling" of trust funds for purposes of investments where the settlor of the trust expressly authorizes such investment.

Accordingly, from and after June 12, 1929, and in accordance with this opinion of the authorities of the state of New York and the ruling of the Commissioner of Internal Revenue, this plan of investment of trust funds was continued.

However, on or about May 27, 1932, plaintiff was notified that the Commissioner of Internal Revenue had changed his opinion, and on or about July 20, 1932, the Commissioner of Internal Revenue revoked his ruling of three years before and now holds that this "Composite Fund" is an "association" and the stamp tax on the certificates of ownership was imposed accordingly for the past three years. This has occasioned the controversy.

Since May 1, 1929, when the "Composite Fund" became operative, the commingled trust moneys have been invested and reinvested, profits and losses sustained on investments have been allocated to the individual trust estate in the *precise* proportion of the investment, and the trust company, as trustee of each individual trust, has reported the capital gain or loss on assets held for the sole benefit of an individual trust, the income from the "Composite Fund" passes to the Brooklyn Trust Company as trustee of the individual trusts, and this is reported and the beneficiary of the individual trust includes that income, along with any other income of other investments of this trust, in his income tax return to the state of New York and the federal government. Thus taxes have always been paid on the basis of an actual trust in actual operation.

If the present stamp tax is valid, the beneficiaries of these trusts will now be taxed a "corporate" tax in addition to these other taxes.

It does not seem to me that the mere "commingling" of the individual trust funds for the purposes of investment changes the nature of the act and changes it into an "association" or "corporate activity." Throughout it is

290

merely an extension of a trust service, entered into by the trustee at the request and with the consent of the settlor of a trust, in accordance with the law of the state of New York.

Moreover, the proof shows that this "Certificate of Ownership" is simply a matter of bookkeeping. It is signed by the Brooklyn Trust Company and handed to the Brooklyn Trust Company as trustee. It is issued to itself solely for evidentiary purposes. It could be dispensed with entirely. It is an interdepartmental document. It is simply a receipt. It never reaches or is possessed by the settlor of the individual trust. The only obligation imposed by this certificate of ownership is imposed upon the trust company which continues to hold the certificate. It must be redeemed when the trust falls in. It is not a corporate security. It is not handed to the settlor or maker of the trust as evidence of an interest in a fund. It clearly lacks the essential characteristics of a certificate of stock or a certificate of indebtedness.

The above seems to me to be sufficient indication that the commissioner's first ruling was correct.

█ But a word or so may be said as to the other contention, which is that this "Composite Fund" is an "association" within the definition or inclusion of the term "corporation." There are a large number of cases cited in the excellent briefs submitted, but apparently Hecht et al. v. Malley, 265 U. S. 144, 44 S. Ct. 462, 68 L. Ed. 949, is the leading authority on what constitutes an "association" as the term is employed in the act.

Defendant seems to rely also on the case of Ittleson v. Anderson (D. C.) 2 F. Supp. 716. There the learned judge stated that to form an "association" there must be shown three requisites. These are: That there must be a quasi corporate form; its trustees must be associated together in much the same manner as directors of a corporation; and, finally, they must be engaged in carrying on a business.

I have examined these cases. Also, there should be considered, the cases of Burk-Waggoner Oil Ass'n v. Hopkins, 269 U. S. 110, 46 S. Ct. 48, 70 L. Ed. 183; Crocker et al. v. Malley, 249 U. S. 223, 63 L. Ed. 573, 2 A. L. R. 1601. Hemphill v. Orloff, 277 U. S. 537, 48 S. Ct. 577, 72 L. Ed. 978. It seems to me that in all these cases the proven facts differ materially from the facts in the action before me.

I do not believe that the mere investing of trust funds loses its character as an investment of trust funds simply because the investment by the trustee is made in a fund in which other trustees invest. The plan before me is simply an investment of a trust fund in a still larger trust fund, with very plain advantages in the way of economy and opportunity to the settlor of the individual trust.

It may well be that, where other facts are present, a trustee of a trust fund may find himself involved in a business, contrary to law, or in the manner indicated in some of the cases already cited or elsewhere to be found; but none of these things is present in the plan shown in this action.

It is my opinion, therefore, that the "Composite Fund" is not an "association" within the contemplation of the act.

Plaintiff is entitled to judgment. Submit findings of fact and conclusions of law.