BROOKLYN TRUST CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 142.

Circuit Court of Appeals, Second Circuit.

Jan. 6, 1936.

AUGUSTUS N. HAND, Circuit Judge, dissenting.

———◆———

Francis L. Durk, of Brooklyn, N. Y., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., Sewall Key and Helen R. Carloss, Sp. Assts. to the Atty. Gen., and Carlton Fox, of Washington, D. C., for respondent.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The Brooklyn Trust Company, a banking corporation under the laws of the state of New York, as trustee, conducts a large trust business involving the handling of all forms of trust estates. In April, 1929, it held trust funds in excess of $250,000,000, and these were invested separately. Trusts of less than $20,000 or $25,000 could not be handled profitably and were generally not accepted by the bank. To permit these funds to be commingled and to afford those with limited capital a ·trust medium by which small sums could be expertly invested in diversified securities without delay or undue expense and under conditions which would permit a ready liquidation of the investment, by a declaration of trust dated April 22, 1929, the trust company created a "Composite Fund, Series A," under which it was provided that the bank would receive from itself, in its capacity as trustee of personal trusts, trust funds to be deposited in this composite fund for investment. The declaration of trust so executed was approved by the New York state superintendent of banks. It provided that the fund should consist of such moneys as the bank, acting in its fiduciary capacity and with express authority so to do, should deposit with itself for investment and reinvestment or such other disposition as the declaration provided. The fund was to be divided into units of a face value of $100 each in such number as the bank should determine. Article 3 of the declaration provided that the bank should deliver to itself as trustee of the particular trust whose funds had been deposited a certificate of ownership stating the number of units of the fund secured by each deposit. These certificates were made assignable to other trusts of the bank and were redeemable in cash at the option of the bank or the holder. A method of computing the net value of the fund and the certificates was set forth. By another provision, at the last day of every business month, the income of the fund was to be divided by the number of units constituting the fund on that day, and a proportionate part of the income was to be credited to each unit and paid over to the certificate holders when collected. The bank reserved the right to distribute capital gains. The bank had no financial interest in the composite fund, and received no compensation for managing it. It received, however, commissions for acting as trustee under each personal trust. It had the power to invest and reinvest all sums of money deposited with the composite fund, making investments in its sole discretion, including common stocks and commercial paper, irrespective of whether. or not such investments are provided by law for investment of trust funds; it could vote all stock held in the composite fund, or issue proxies to vote such stock or to exercise any other powers in respect to such stock or other securities held by the fund. It reserved the right to hold investments of the composite fund in its own name, or, in the exercise of its discretion, in the name of a copartnership as its nominee and to engage the services of brokers and others not in its employ and defray from the composite fund their reasonable charges and disbursements. After execution of the

declaration, any funds of which the bank was trustee might be invested in the composite fund and commingled with the funds of other trusts when so authorized in the specific trust agreements, but would not be so invested in the absence of an agreement between the settlor and the bank in its capacity as his trustee. Purchases and sales of securities on behalf of the composite fund were made in the name of the "Brooklyn Trust Company, Trust Department," but separate and independent accounts were kept for the composite fund. Statements showing the investments and the status of the fund were sent out each month on behalf of every trust, the funds of which were invested in the composite fund. In an advertising pamphlet the bank stated that the composite fund on August 31, 1931 comprised 102 separate securities, exclusive of first mortgages on real estate, including 25 bonds, 32 preferred stocks, and 45 common stocks, and that the value of the composite fund on that day was $12,135,278; that there were 143,311 units then outstanding. Meetings were held once or twice a week as required by a committee of the bank's officers and directors, who directed the investment and management of the composite fund. The securities selected for purchase were of the investment type and not of a speculative character.

The record shows that in 1929 the fund made 359 purchases at a cost of $6,017,-446.51 and 16 sales at a price of $318,-035.67; in 1930 the fund made 341 purchases at a cost of $8,569,343.31 and 107 sales at a price of $2,853,703.91. In 1929 and 1930 the record shows there were 40 instances where stocks were sold within two months of their purchase. These figures indicate that the fund was actively managed for investment to the best advantage in a changeable market.

The bank filed fiduciary returns in which it reported the operations of the composite fund. The Commissioner ruled, July 20, 1932, that the fund would be taxed as an association. In July, 1932, the collector of internal revenue demanded a stamp tax of $8,752.55 on the certificate of ownership issued by the fund on the theory that they partook of the nature of corporate shares. The bank paid this stamp tax and sued successfully for its recovery. Brooklyn Trust Co. v. Corwin (D.C.) 5 F.Supp. 287. In March, 1932, the Commissioner asserted a deficiency in income taxes of $23,481.65, for the year 1930, against the bank as trustee of the composite fund, basing it upon the theory that this was an association within section 701 (a) (2) of the Revenue Act of 1928, 45 Stat. 878 (see 26 U.S.C.A. § 1696 (3) and Treasury Regulations 74, Art. 1312, 1314.

▊ The Supreme Court, on December 16, 1935, defined an association within the taxing act in a series of four cases: T. A. Morrissey et al., Trustees v. Com'r of Int. Rev., 56 S.Ct. 289, 295, 80 L.Ed. ——; Swanson v. Commissioner, 56 S.Ct. 283, 80 L.Ed. 283; Helvering v. Combs, 56 S.Ct. 287, 80 L.Ed. ——, and Helvering v. Coleman-Gilbert Associates, 56 S.Ct. 285, 80 L.Ed. ——. The court said in the Morrissey Case:

"'Association' implies associates. It implies the entering into a joint enterprise, and, as the applicable regulation imports, an enterprise for the transaction of business. This is not the characteristic of an ordinary trust—whether created by will, deed, or declaration—by which particular property is conveyed to a trustee or is to be held by the settlor, on specified trusts, for the benefit of named or described persons. * * * But the nature and purpose of the co-operative undertaking will differentiate it from an ordinary trust. In what are called 'business trusts,' the object is not to hold and conserve particular property, with incidental powers, as in the traditional type of trusts, but to provide a medium for the conduct of a business and sharing its gains."

In Ittleson v. Anderson, 67 F.(2d) 323 (C.C.A.2), we held that the determination of the question of whether an enterprise nominally a trust was an association turned on the degree of the trustees' activity in the conduct of a business and not on the formal resemblance to a corporate set-up. We said that, when the trustee of an estate consisting of securities engages in considerable business activity and is trading those securities and loans and invests the proceeds so that he is in reality conducting an investment business for profits, then the estate is in business and is taxable as an association. While the facts of the instant case are not quite as strong as in the Ittleson Case, in the character of the business done, they are substantially the same, so far as the business activity of the trustee is concerned, as those which moved the court to hold the trustee en-

gaged in business and the income taxable as that of an "association" in Investment Trust of Mutual Investment Co. v. Com'r, 27 B.T.A. 1322, affirmed without opinion by this court, 71 F.(2d) 1009.

These cases support the regulations by which the Treasury Department has sought to draw the line between trusts and associations on the character of the activity of the trustees and whether the trust was set up for the purpose of carrying on a business. Treas. Reg. 74, art. 1312, 1314. Here the trustees of the composite fund were, pursuant to the purpose of the trust, carrying on the business of investment. They were not, to apply the recently pronounced test of the Supreme Court, holding and preserving particular property, with incidental powers, but were conducting a live investment business and sharing its gains. See: Sears, Roebuck & Co. Employees' Savings, etc., v. Com'r, 45 F.(2d) 506, 508 (C.C.A.7, 1930), where the court, in holding a device an association, said:

"However invested, the investment of the fund was not merely a matter of a clerk writing or telephoning to a broker to buy a desired number of shares, but what, how much, and when to buy were things that had to be determined, not as a matter of guesswork, but by those who understood market conditions, the company's business conditions, and who had an intelligent view of the business future."

The large investment here in the various types of securities required active management. To keep such a fund invested in securities to the best advantage was to engage in business in the fullest sense. In Stanley Securities Co. v. United States (Ct.Cl.1930) 38 F.(2d) 907, certiorari denied 282 U.S. 845, 51 S.Ct. 25, 75 L.Ed. 750, a corporation doing much less in the management of stock investments was held to be "doing business" and taxable for the exercise of the privilege.

The fact that there is but one trustee does not preclude the finding that an association exists between the investors and their trustee or among the investors alone. See Ittleson v. Anderson, 67 F.(2d) 323, 324; Page v. McLaughlin (D.C.E.D.Pa.) 7 F.Supp. 75, 77. Cf. Hecht v. Malley, 265 U.S. 144, 160, 161, 44 S.Ct. 462, 68 L.Ed. 949. Thus this fund was properly taxable as an association.

Moreover, the composite fund is separable from the individual trust estates from which the money invested in the fund came. If an individual desired to become a participant in the fund, instead of buying a number of units directly, he would have to pay his money to the Brooklyn Trust Company and sign a short form of trust agreement. This merely authorized the trustee to invest in the composite fund. This formal interposition of the composite trustee in the role of an individual trustee cannot avoid the tax here. The record does not show how much of the composite fund came from these short-form trusts. It does give evidence that the company solicited investments of this type. Even the so-called strict trusts were merely the sources from which money for the composite trust came. This was a separate entity, set up by the declaration of April 22, 1929, and remains a separate entity for tax purposes.

The decision of the district court in Brooklyn Trust Company v. Corwin, 5 F. Supp. 287, involving a recovery of the stamp tax from the collector, is not res adjudicata against the Commissioner here. Bankers' Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 53 S.Ct. 150, 77 L.Ed. 325; cf. Tait v. Western Maryland Railway Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405.

Decision affirmed.

AUGUSTUS N. HAND, Circuit Judge (dissenting).

While this case is not free from doubt, I think the facts do not bring it within the statute. Essentially the Brooklyn Trust Company as trustee of various common-law trusts does nothing more than commingle the assets of these trusts under lawful authority. The beneficiaries have no legal interest in the composite fund which is owned and managed by the Brooklyn Trust Company as trustee in various capacities. In other words, it is owned and managed by one person, the Brooklyn Trust Company—the same person that is the common-law trustee of all the trusts. The interest of the trustee in its various capacities is only as owner of a fund in which the trusts have undivided shares. There is no more ground for imposing separate taxes on it than upon the earnings of a partnership as separate from the income of the individual partners.

None of the decisions have gone far enough to cover the present case in terms, and there seems to be no reason for imputing such an intention to the Revenue Act. In my opinion, the order of the Board of Tax Appeals should be reversed.