## EQUITABLE TRUST CO. et al. v. MAGRUDER, Collector of Internal Revenue.

### Civ. A. No. 639.

District Court, D. Maryland.

March 12, 1941.

712

Wm. R. Semans, Jos. Addison, and Barton, Wilmer, Bramble, Addison & Semans, all of Baltimore, Md., for plaintiff.

Bernard J. Flynn, U. S. Atty., and T. Barton Harrington, Asst. U. S. Atty., both of Baltimore, .Md., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Paul S. McMahon, Sp. Arsts. to Atty. Gen., for defendant.

CHESNUT, District Judge.

The question in this federal capital stock tax case is whether the Equitable Trust Company, trustee under agreement between itself and Income Foundation Fund, Inc., dated November 20, 1934, is subject to taxation as an "association". The applicable statutes are the Revenue Act of 1935, section 105 (as amended by section 401 of the Revenue Act of 1936), and the Revenue Act of 1936, section 1001. See 26 U.S.C.A. Internal Revenue Acts, pages 796, 798, 971. Section 105 imposed "upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1 for each $1,-000 of the adjusted declared value of its capital stock"; and section 1001(a) (2) under the caption of "Definitions" provided that "the term 'corporation' includes associations, joint-stock companies, and insurance companies". Section 1001(a) (1) also provided that "the term 'person' means an individual, a trust or estate, a partnership, or a corporation". The tax year involved is that ending June 30, 1936.

There being a controversy between the Equitable Trust Company, trustee, and the

Commissioner of Internal Revenue as to whether the trustee was subject to the capital stock tax, the former in 1937 prepared and filed a return, under protest, in which it declared the value of its entire capital stock as $50,000 (apparently an arbitrary amount) and then paid the tax rate of $1 per thousand—$50 plus $2.38 interest; and promptly filed a petition for refund which was denied, resulting in this suit for recovery of $52.38 with interest. The case is in the nature of a test case to determine the legality of the tax for the year in question and subsequent years, and also in similar situations with respect to other trustees.

The facts are stipulated, and the court adopts the written stipulation of facts as the findings of facts in the case. The stipulation summarizes the essential provisions of the agreement of November 20, 1934 above referred to, and states the activities of the parties thereunder; but it will be sufficient for the purposes of this case to further condense the summary in the following statement.

The Equitable Trust Company is a Maryland banking institution. The other party to the agreement, the Income Foundation Fund, Inc., also is a Maryland corporation with general powers to invest and deal in property. In practice, it is substantially what is called an investment trust. It was incorporated shortly prior to the making of the agreement. At the present time, it holds assets of the market value of approximately $1,500,000 and has numerous stockholders. Under its charter, it has power to buy and sell shares of its own capital stock. The evident purpose of the agreement of November 20, 1934, was to promote the sale and distribution of its capital stock, to provide funds for the conduct of its business in buying and holding securities consisting of bonds, and preferred and common stocks of other corporations, and to facilitate this by providing a formal plan whereby investors of small amounts of money could arrange to buy shares of capital stock of the corporation on the instalment payment plan. To accomplish this purpose, the somewhat elaborate written agreement of November 20, 1934 was made with the Equitable Trust Company.

The substance of the agreement is this. A separate Maryland corporation known as Income Foundation was formed to act as a so-called distributor of the stock, which really meant that the latter corporation was to be a selling agent on a commission basis. This selling agent solicited the public to buy stock of the Income Foundation Fund, Inc., on the instalment plan, by making an initial deposit with the Equitable Trust Company and adding thereto from time to time in periodic payments monthly, semi-annually or otherwise. In evidence of these payments the Equitable Trust Company as trustee issues to the depositors a so-called trust certificate which in substance recites the receipt of the deposit and of the contemplated further periodic deposits to be made. By the certificate, the depositor directs the trustee to apply the amounts paid in to the purchase of shares of the capital stock of the Income Foundation Fund, Inc., at the then current market value thereof, after deducting a certain percentage (about one per cent) to cover the expenses and compensation of the trustee, and a further percentage (about ten per cent) for commissions to the selling agent, Income Foundation. The rights of the depositor as holder of the certificate are (1) at any time, upon surrender of the certificate to the trustee, to have his shares of stock sold and the net proceeds paid over to him; (2) until this is done, to have the trustee receive the dividends or other distributions applicable to the shares of stock and treat them as further deposits for purchase of more shares; or (3) to receive from the trustee such dividends or distribution on the shares in cash, less any deductible expenses. In the agreement, the Income Foundation Fund, Inc., agrees to sell to the trustee for the account of the respective depositors its shares of stock at the current market price, and also agrees from time to time to buy back from the trustee its shares of stock at current market prices. It is important to note that the trustee has no power or discretion to deal with the amounts deposited by the holders of the certificates other than the purchase of the shares of stock of the Income Foundation Fund, Inc., after the deduction of the small percentages for expenses. The form of the certificates issued varies slightly with respect to the nature and amount of payments; and at the option of the depositor a certain portion of the deposits made by him may be applied to the cost of carriage for his benefit of group life insurance, the proceeds of which, in the event of his death before maturity of the certificate, are to be applied to the payment of the balance

of the periodic payments contemplated. These are the essential features of the agreement although there are a large number of subordinate provisions which, in somewhat meticulous detail, define the respective obligations of the parties, and their exemptions from liability other than those expressly assumed. These details are not uncommon in agreements where a banking institution acts as trustee for a limited and particular purpose.

For convenience in administration, the trustee is permitted by the agreement to consolidate its holdings of the certificates of the capital stock of Income Foundation Fund, Inc., in one or more certificates from time to time; but the trustee is required to keep the account of each depositor separately and individually so that the number of shares of stock purchased for his account can always be quickly and definitely determined, and the amount of his share holdings sold and transferred from time to time. The holder of the certificate is also entitled to receive from the trustee upon demand a proxy to vote the number of shares of his stock at stockholders' meeting of Income Foundation Fund, Inc. The certificates are not negotiable, and not assignable without the consent of the other parties. Art. 5, sec. 1, of the agreement provides as follows: "Nothing herein contained or contained in the Certificates shall be construed so as to constitute the Holders, Partners, or Members of an association, nor to constitute the Certificate, as evidence in a single trust. It being the intention hereof that each Certificate represents a distinct and separate Trust and this Agreement only sets out terms and conditions common to each of such Trusts and the conditions under which each of such Trusts may be created."

■■■ The only question in the case is whether the powers, duties and activities of the Equitable Trust Company as trustee under this agreement constitute it an "association" within the meaning of the taxing statute. It is, of course, well known that the federal income tax statutes have always made a sharp distinction between individuals and corporations, with respect to the rate and other incidents of the tax. In general, a trustee acting under an ordinary trust is not subject to taxation as a corporation, but rather as an individual, although with some necessary differences. Again, partnerships have a definite status under the income tax law and are not taxed like corporations. It is also to be noted that the capital stock tax on corporations, with which this case is concerned, is imposed, in addition to ordinary income and excess profits taxes, as an excise tax "with respect to carrying on or doing business". The obvious reason for including an association in the category of a corporation for income and capital stock taxation is to impose a fair share of the whole burden of taxation upon business organizations or associations which, although not operating under corporate form, nevertheless are engaged in making or creating profits in much the same way that corporations carry on business activities. As the statute does not define the word "association" (which has various meanings in different contexts), it is not surprising that the courts have had difficulty in uniformly applying the term to the many different forms of business activity conducted or participated in by groups of individuals not operating under customary corporate form. In many of the cases the legal problem is whether the essential nature of the activity constitutes an ordinary trust, taxable like an individual, or a so-called "business trust," taxable as an association. The same definition of a corporation, as including an association, has been carried in the federal tax statutes for many years; but it was not until the comparatively recent decision of the Supreme Court in the case of Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263, that the principles to be applied in the determination of whether a business group was taxable as an association were comprehensively outlined in an opinion by Chief Justice Hughes. As applied to the facts of that case, and in the three immediately succeeding cases of the same general nature, the so-called "trusts" there involved were held to be taxable "associations". By the same principles, but on different facts, the trust involved in Lewis & Co. v. Commissioner, 301 U.S. 385, 57 S.Ct. 799, 81 L.Ed. 1174, was held not taxable as an "association". For the purposes of this case it will be sufficient to restate briefly only some of the tests outlined in the Morrissey case, to distinguish between the ordinary trust and one having the characteristics which make it taxable as an association. In the opinion it is said (296 U.S. page 356, 56 S.Ct. page 295, 80 L.Ed. 263): " 'Association' implies associates. It implies the entering into a joint enterprise, and, as the applicable regulation imports,

an enterprise for the transaction of business. This is not the characteristic of an ordinary trust—whether created by will, deed, or declaration—by which particular property is conveyed to a trustee or is to be held by the settlor, on specified trusts, for the benefit of named or· prescribed persons. Such beneficiaries do not ordinarily, and as mere *cestui que trustent,* plan a common effort or enter into a combination for the conduct of a business enterprise."

█ It was further said that the term "association" implied resemblance to but not identity with a corporation. The substance of the distinction between a nontaxable trust, and a so-called business trust which is taxable as an association, lies in the intrinsic nature of the enterprise and the relation of the several associates thereto, rather than in the mere form of the association or in technical distinctions between legally constituted corporations, joint stock companies, partnerships, and the like. Thus the test is not· dependent upon mere formal or procedural matters, nor upon the number of the respective trustees and beneficiaries, nor the extent of actual or potential control by beneficiaries nor is the size of the business necessarily controlling. What is more important is to ascertain whether the parties have joined in a common enterprise for the transaction of business, and whether the beneficiaries who contribute money or property for that purpose have become associated in the common enterprise. See Helvering v. Combs, 296 U.S. 365, 368, 56 S.Ct. 287, 80 L.Ed. 275. ·

The Morrissey case considered the several successive regulations which had been formulated by the Treasury Department in the interpretation of the scope of the word "association" as used in the statute, and said that in view of the indefiniteness of the term the Department was authorized to supply rules for the enforcement of the statute within the permissible bounds of administrative construction. It was found, however, that the regulations themselves there considered required further explication. Since then, modified regulations have been issued by the Treasury Department. See Treasury Regulations 64, 1936 Ed., Arts. 21 and 22; and Treasury Regulations 94, Arts. 1001, 2, 3. These latter regulations seem to have adopted very largely the principles outlined in the Mor-

rissey case and do not seem to have made any important extensions thereof.

█ In this case the relationship of the Equitable Trust Company to the several depositors is quite unlike that of the trustees and beneficiaries in the Morrissey case, and the three cases immediately following it; Swanson v. Commissioner of Internal Revenue, 296 U.S. 362, 56 S.Ct. 283, 80 L.Ed. 273; Helvering v. Combs, 296 U. S. 365, 56 S.Ct. 287, 80 L.Ed. 275; Helvering v. Coleman-Gilbert Association, 296 U. S. 369, 56 S.Ct. 285, 80 L.Ed. 278, and the facts here are also not well comparable to the particular kind of trust held not taxable as an association in the Lewis case, supra. But the application of the principles of the Morrissey case to the facts of this requires the conclusion of law that the Equitable Trust Company as trustee is not taxable as an association.

As was said in the Morrissey case, an association implies associates, who must have a common interest in a common business enterprise. It cannot be said that the several depositors in this case have any common association or interest in a common enterprise of which the Equitable Trust Company as Trustee is the managing agent. The relationship of the trustee to the depositors is several and not joint, and there are no relations whatever of the several depositors *inter sese.* In this respect, they have nothing in common more than the individual depositors in any bank. The only common association or common interest that they have is that of· stockholders of Income Foundation Fund, Inc., and is in no respect different from the relationship of the stockholders in any corporation. Under the agreement there is no relationship or obligation running from the trustee to the depositors as a group, but only to each of them separately under their respective certificates. The amounts of the several deposits with the trustee are not pooled in a common fund for joint benefit, but are held and invested for the depositors severally and without regard one to another. In so far as the depositors are concerned, there is no common fund or pooling of interest other than the ordinary relationship of stockholders in the assets of a corporation.

Nor can it properly be said that the Equitable Trust Company is the manager of a business trust or business enterprise, such as existed in the Morrissey case and

the three cases following it. Not only is the obligation of the trustee several and not joint with respect to the depositors, but the powers and duties of the trustee are strictly prescribed and limited with respect to the funds deposited by each depositor. Indeed, it may be properly said that the duties of the trustee are purely ministerial. It must apply the balance of the deposit, over and above the deducted expenses, to one and only one purpose—the purchase at current market price of shares of stock of Income Foundation Fund, Inc.; and upon surrender of the certificate which evidences the trust, the sole duty of the trustee is to sell the applicable shares of stock at the current market price and pay over the net proceeds to the beneficiary. Likewise, as to the dividends received on account of the stockholdings, the trustee is required to re-invest them in the purchase of further shares of the same stock or, at the option of the beneficiary, pay them over to him.

Any uncertainty with respect to the tax-ability of the trustee in this case would seem to be due to a confusion of the taxa-bility of the trustee as an association with that of the Income Foundation as a cor-poration. There is, of course, no doubt that the latter corporation is conducting a business enterprise—that of an investment trust; and there is no contention that it is not fully subject to all federal tax statutes affecting corporations. The taxable busi-ness that is being conducted in this case is that of the Income Foundation Fund, Inc. It is that business which makes the profits, if any are made, and these profits are dis-tributed to the stockholders in the form of dividends, and are taxable to the stock-holders for whose account the Equitable Trust Company receives them. The one per cent compensation received by the trustee, of course, enters into the whole of its corporate income on which it is taxed as a corporation; and likewise the com-missions earned by the Income Foundation as the selling agent enters into its corpo-rate taxable income. All possible elements of profit arising to any one as a result of this agreement are, therefore, undoubtedly taxable to the corporations and individuals as stockholders receiving dividends. The effect of the federal income taxation scheme on corporations and individuals respectively results in corporate net income being legally twice taxed, first to the corpo-ration and then to the stockholders in the form of dividends; but the consequence of holding the trustee also taxable as an as-sociation in this case would be to put a triple tax upon the profits earned by In-come Foundation Fund, Inc., as a corpora-tion, one tax being on the corporation, the second on the trustee as an association and the third on the individual stockholders who receive the dividends. Some supple-mental testimony in this case, in addition to the stipulation, shows that it is the current practice to inform the several depositors as stockholders of the dividends paid to the trustee for their respective accounts, as appropriate income tax data.

Counsel for the Commissioner relies on Hamilton Depositors Corp. v. Nicholas, Collector, 10 Cir., 111 F.2d 385, and Brooklyn Trust Co. v. Commissioner, 2 Cir., 80 F.2d 865, in support of his position. In the first, the Hamilton Depositors Corp. was held taxable as an association with re-spect to the common fund there involved. Its situation with regard to the particular business enterprise was analogous to that of the Income Foundation Fund, Inc., in this case, as it was the manager of the particular investment fund in which the beneficiaries had an interest in common. In the Brooklyn Trust case there was also a common investment fund of which the Trust Company was the manager. It was authorized to invest the common fund in diversified securities at its discretion, and to issue certificates of beneficial participa-tion therein to itself as trustee, which were assigned to various participating personal trusts in the bank. In the present case, the only common fund is that held by Income Foundation Fund, Inc., which is of course taxable as a corporation.

In contrast with the factual situation in these two cases it is to be noted that the Board of Tax Appeals in two recent deci-sions has held that fixed investment trusts where the trustee has little or no power to change investments or to make reinvest-ments at its discretion are not taxable as associations. See Chase National Bank v. Commissioner, 41 B.T.A. 431, and North American Bond Trust, 41 B.T.A. 1343. It is said these two cases are now on appeal to the Second Circuit. See also Commis-sioner v. Gibbs-Preyer Trusts, 6 Cir., 117 F.2d 619, Feb. 11, 1941.

On the whole case I reach the conclusion of law that the plaintiff is entitled to re-cover the sum of $52.38 with interest as provided for in the applicable statute. Counsel may submit the proper form of judgment in accordance herewith.