## UNITED STATES v. NIPISSING MINES CO.

(District Court, S. D. New York. May 14, 1912.)

1. TAXATION (§ 382\*)—EXCISE TAX ON CORPORATIONS—ALLOWANCE FOR DEPRECIATION.

In determining the net income of a corporation for a given year on which it is subject to excise tax under Act Aug. 5, 1909, c. 6, § 38, subd. 3, 36 Stat. 112 (U. S. Comp. St. Supp. 1911, p. 947), the corporation is entitled to a "reasonable allowance" for depreciation of its property, which, if the question of the amount of tax due is litigated, is to be determined as a question of fact on the evidence.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 633; Dec. Dig. § 382.\*]

2. TAXATION (§ 382\*)—EXCISE TAX ON CORPORATIONS—ALLOWANCE FOR DEPRECIATION.

Under such provision, a mining corporation engaged in extracting ore from its mines is entitled to an allowance for depreciation equal to the value in place of the ore extracted and disposed of during the year.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 633; Dec. Dig. § 382.\*]

Action by the United States against the Nipissing Mines Company to recover additional corporation excise tax under Tariff Act Aug. 5, 1909, c. 6, § 38, 36 Stat. 112 (U. S. Comp. St. Supp. 1911, p. 947). Verdict directed for defendant.

Henry A. Wise, U. S. Atty., and Addison S. Pratt and Frank M. Roosa, Asst. U. S. Attys., all of New York City.

Richard T. Greene and George F. Hurd, both of New York City, for defendant.

LACOMBE, Circuit Judge (directing verdict). [1] This statute provides for a deduction of all losses actually sustained within the year, including reasonable allowances for depreciation of property, if any. That is within the second subdivision of section 38. The circumstance that in the third subdivision of section 38, where the form of making the return is provided for, the same words are repeated with a slight modification requiring a separate statement of any amounts *allowed* for depreciation of property, does not in my opinion change the meaning of the words used in the second subdivision of the paragraph. The word "allowed" refers to an allowance by the Commissioner of Internal Revenue, and his allowance or disallowance ends the matter unless some case is made out, upon the strength of which a party may come into court to test the reasonableness of the allowance or disallowance by the Commissioner. The suggestion that there can be no allowance for depreciation unless such depreciation is entered in the books of the company, recorded from time to time, seems to me without force. The books may be very badly kept, kept in such a way as will in the end bring them into trouble and difficulty; but this act does not provide any penalty for bad bookkeeping. It simply provides that 1 per cent. of the net profit of the various corporations shall be turned over to the government, and provides that in finding out that net profit there shall be a reasonable allowance for depreciation.

[2] Now, the testimony here seems to me entirely reasonable, and certainly it is not contradicted, that the value of the ore as it lies in the ore beds is as stated by the witness to be 31.1 cents. The government does not controvert the testimony by other witnesses, nor does it dispute the expert's method of calculating. This unit of value, 31.1 cents, multiplied by the total amount of ore that was removed during the year, indicates in dollars the amount by which the total assets of this company were depleted through the operation of the mine during that year. It seems to me to be a reasonable allowance for depreciation within the meaning of the statute. Certainly so much value has been eliminated from the property of the company forever. Granting the proposition that such is a reasonable allowance for the depreciation, upon the figures here there is no net profit remaining, which would indicate that the government's claim for $8,534.68 should be dismissed, and that a verdict should be directed in favor of the defendant for the counterclaim, being the amount taxed, which it paid, $5,-188.62, with an exception to the government on each of these rulings.

If the evidence had shown that the unit value 31.1 cents is too high, there would be some net profit despite the depreciation; but the case

must be determined on the testimony. It makes no difference that, in filling up the form of return under the direction of the revenue officers, this claimed allowance was called "return of capital," which it certainly is *not*, instead of "depreciation of deposits," which it clearly is.

If the known value of an ore bed were exactly $2,000,000, and exactly $500,000 were taken out of it each year, in four years there would be nothing left. It is difficult to say why it may not reasonably be said that the ore bed suffers each year a depreciation of $500,000, just as $10,000 piece of machinery with a life of 10 years suffers a depreciation of $1,000 each year. As I read the statute, Congress intended to allow all reasonable depreciations to be deducted from the gross profits to find the net; and the reasonableness of any deduction asked for depends upon the nature of the claim on which it is based, not upon the amount of dollars it may aggregate. Nor is it apparent why it should make any difference that one cannot tell with reasonable certainty the total value of the deposit so long as the value of the amount removed in any one year can be ascertained with sufficient accuracy. Nor is it apparent why the problem is altered in any way by the circumstance that the property was bought at a very high or at a very low price, or that the capitalization of the company which owns it is large or small.

Verdict directed for defendant for $5,188.62.