MITCHELL BROS. CO. v. DOYLE, U. S. Internal Revenue Collector.

(District Court, W. D. Michigan, S. D.    April 30, 1915.)

1. INTERNAL REVENUE ⊂⊃9—EXCISE TAX ON CORPORATIONS—INCOME.

A corporation, whose property consisted chiefly of timber lands and a sawmill and its business of the manufacture and sale of lumber and other timber products, in making its return of net income under the Corporation Tax Law (Act Aug. 5, 1909, c. 6, § 38 (2), 36 Stat. 112 [Comp. Stat. 1913, § 6301]), was entitled to deduct from its gross receipts as capital assets a sum at least equal to the market value at the time the act went into effect of the standing timber from which the lumber sold during the year was manufactured, although such timber was bought years before at a smaller price, and has since been carried on its books at the original cost. It was also entitled to deduct as capital assets any amount received from the sale of cut-over or other lands sold during the year, not exceeding their market value at the time the law went into effect.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. ⊂⊃9.]

2. INTERNAL REVENUE ⊂⊃9—EXCISE TAX ON CORPORATIONS—VALUATION OF PROPERTY.

Neither the government nor the corporation under such act is bound by the valuation at which property is carried on the books of the corporation.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. ⊂⊃9.]

At Law. Action by the Mitchell Bros. Company against Emanuel J. Doyle, as Collector of Internal Revenue for the Fourth Collection District of Michigan. Judgment for plaintiff.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Norris, McPherson, Harrington & Waer, of Grand Rapids, Mich., for plaintiff.

Myron H. Walker, U. S. Atty., of Grand Rapids, Mich., for defendant.

SESSIONS, District Judge.   Plaintiff was incorporated in 1903, succeeding to and taking over the property of the former copartner-ship, Mitchell Bros.   The property purchased and so taken over by the corporation consisted for the most part of timber, lands, and a large sawmill plant.   Since its organization, plaintiff has been engaged in the lumber business, cutting and manufacturing its own timber into lumber and other forest products, and selling and marketing the same.   In 1903, the average market value of its merchantable hard-wood timber was $2.25 per thousand feet, of its pine timber $8 per thousand feet, and of cut-over or "stump" lands $2 per acre.   Timber suitable only for cordwood had no market value.   Plaintiff then paid the amounts above stated for its timber and lands, and has since carried them upon its books at the same prices.   The plaintiff also purchased from Mitchell Bros. an office building and lot in the city of Cadillac for $3,500, and two vacant lots in the city of Grand Rapids for $500.   The prices so paid were at that time the fair market values of these parcels of land.

After its purchase, plaintiff's timber, lands, and other property, from natural and other causes, steadily increased in value.   During the years 1909, 1910, 1911, and 1912, the average and actual market value of its standing merchantable hardwood timber was from $4.20 to $4.50 per thousand feet, and of its pine $20 per thousand feet.   The actual market value of its stump lands varied from $4 to $12 per acre.   The office building and lot in the city of Cadillac was fairly worth $5,000, and the two lots in the city of Grand Rapids more than $700.   In 1906 a chemical and charcoal plant was located in the city of Cadillac, and thereafter timber suitable for cordwood had a market value of 25 cents per cord.

In compliance with the provisions of the Corporation Tax Act of 1909 (36 Stat. 112, c. 6, § 38 [Comp. St. 1913, § 6301]) plaintiff made a return in each of the years 1909, 1910, 1911, and 1912.   In computing its taxable net income in each of such returns plaintiff deducted from its gross receipts the then actual market value of the timber stumpage cut and converted into lumber during that year, and also the actual market value of its stump and other lands sold during the year.   An assessment was duly made by the Commissioner of Internal Revenue upon each of such returns, and the excise taxes so levied were paid by the plaintiff.   Afterwards, and following an investigation, the Commissioner of Internal Revenue made an additional assessment for each of the four years, based upon the difference between the prices paid by the plaintiff in 1903 for its timber, lands, and other property, as shown by and carried on its books, and the amounts deducted as and for the actual market values of such properties at the times of the making of the returns.   The additional excise taxes so levied were paid by plaintiff under protest, and this suit is brought to recover back the amounts so paid.

[1] The issues here presented, although novel, are sharply defined. The plaintiff claims that its standing timber and other property were capital assets, and that the portion of the proceeds derived from the cutting, manufacture, and sale of such timber, measured by the actual stumpage value thereof, did not constitute income, and therefore that, in computing its taxable net income, it was entitled to deduct such actual stumpage value of its timber from its gross receipts. The Commissioner of Internal Revenue concedes the right of the plaintiff to deduct the original cost price of the timber, as shown by its books, from its gross receipts, but denies its right to make any deduction on account of increase in values. The Attorney General contends that all the proceeds derived from the manufacture and sale of the timber constituted income, and that plaintiff, in its returns of taxable net income, had no right to make any deductions whatsoever on account of either cost price or actual value of the timber stumpage.

The proofs in this case show conclusively that between the time of their purchase in 1903 and the 1st day of January, 1909, when the Excise Tax Law became effective, plaintiff's timber, lands, and other property had so increased in value that they were fully worth the amounts which were deducted from gross receipts as capital assets. It cannot be denied that the plaintiff's standing timber was a part of its capital assets, and that the conversion of the timber into lumber and the sale of the lumber constituted at least an indirect sale of the timber, and so of capital assets. The mere change of the timber into lumber or money did not transform capital into income. The miller who grinds his stock of wheat into flour and sells the flour does not thereby destroy or impair his capital and convert it into income. The same is true of the manufacturer who converts his cotton into cloth, the landowner who sells his lands for cash, the furniture maker who transforms lumber and other material into chairs and tables, the ironmaker who produces steel rails from iron ore, and every industrial institution where raw materials are converted into finished or other products or into money. In each instance income is and must be something over and above the original capital investment plus the cost of production and sale. This rule has been uniformly recognized by the Commissioner of Internal Revenue in the decisions and directions issued from his office for the guidance of the collectors of corporation excise taxes and of the taxpayers themselves.

Standing timber is as staple a product as wheat, cotton, or iron. It is a tangible and visible property, whose quantity, quality, and market value can be readily ascertained and determined. In these respects it is wholly unlike mineral ores in place under ground. If plaintiff had sold its standing timber on the 1st day of January, 1909, at its market value, could it be claimed that any part of the proceeds of such sale constituted taxable income, because more was realized than the original cost in 1903? Certainly not, for the reason that the increase in value had accrued prior to the time when the Excise Tax Law became operative. If plaintiff had purchased its timber 30 years ago from the government at $1.25 per acre, and had manufactured all of it into lumber and sold the lumber during the year 1909 at market prices

which prevailed on the first day of that year, could it be claimed that the entire proceeds of the lumber above the trifling purchase price of the timber and the cost of manufacture and sale constituted taxable net income? Can the government, at least in the absence of specific legislative declaration to that effect, reach back years before the enactment of its revenue statute for a controlling factor in determining the net income of a corporation? Can it ignore a substantial increase in value of property, which has occurred and accrued prior to the taking effect of the tax law, and thereby convert into income that which is not income within any meaning of the term? To state these questions is to answer them. Gray v. Darlington, 15 Wall. 63, 21 L. Ed. 45; Bailey v. Railroad Co., 106 U. S. 109, 114, 115, 1 Sup. Ct. 62, 27 L. Ed. 81.

The rule of apportionment of the increment or increase of values between the years prior to January 1, 1909, and those subsequent to that time, which has been recognized and acted upon by the Commissioner of Internal Revenue, does not aid the government in this case, for the reason that the amounts deducted by plaintiff from its gross receipts as capital assets did not exceed the actual market value of its property upon January 1, 1909. It makes no difference whether such deduction was made nominally on account of depreciation of property or for restoration of capital.

Tested by another well-settled rule that the gain, profit, or income of a corporation is that which may be withdrawn or expended without reducing the value of its property or impairing its capital, the contentions of the government must fail. Every tree cut from the lands of plaintiff after January 1, 1909, and manufactured into lumber, cordwood, or other products, and then sold, reduced its property and capital by the exact amount of the value of such standing tree, unless an equivalent portion of the proceeds of the sale was substituted therefor. The government is not concerned with the gains made, profits earned, or income received, whatever their form, by the plaintiff prior to the time when its tax law became operative. Whether a valid retroactive law could be enacted need not be determined, because no attempt has been made to tax such gains, profits, or income.

[2] The fact that plaintiff carried its properties upon its books at their original cost prices is neither material nor important. Mere bookkeeping entries cannot preclude the government from collecting its revenues. Nor are such entries conclusive upon the taxpayer, when it is shown, as here, that they represent and indicate ancient, instead of present, actual values. The bookkeeper creates nothing. His methods, figures, and records must yield to proven and established facts. Baldwin Locomotive Works v. McCoach (D. C.) 215 Fed. 967; United States v. Nipissing Mines Co. (D. C.) 202 Fed. 803.

What has been said of timber converted into lumber, cordwood, and other forest products, and then sold, applies with even greater force to plaintiff's stump lands and city lots. There was no intermediate transformation of the real estate into other forms of property before its sale. According to the proofs, the lands were sold and converted into money at no more than their actual market value on the

1st day of January, 1909. On that date they were capital assets, and the moneys thereafter derived therefrom did not become taxable income. While no case exactly in point has been cited, the weight of authority is in accord with the views herein expressed. Stratton's Independence v. Howbert, 231 U. S. 399, 34 Sup. Ct. 136, 58 L. Ed. 285; Von Baumbach v. Sargent Land Co., 219 Fed. 31, 134 C. C. A. 649; Sargent Land Co. v. Von Baumbach (D. C.) 207 Fed. 423; United States v. Nipissing Mines Co. (D. C.) 202 Fed. 803.

Judgment will be entered in favor of the plaintiff for the amount of the taxes paid by it under protest.