Moss, Judge,
delivered the opinion of the court:
The plaintiff was organized in July, 1914, to engage in the business of selling redeemable coupons and certificates to widely known business concerns, for distribution by them with sales of their products. During the years 1914, 1915, and 1916 plaintiff expended large sums of money in advertising its business throughout the country for the purpose of procuring desirable contracts with large manufacturers and merchants. In its income-tax returns for 1914, 1915, and 1916 plaintiff claimed as deductions from gross income the expenses of said advertising campaign, as “ ordinary and necessary expenses paid within the year in the maintenance and operation of its business and property,” under the *180 appropriate section of the Revenue act of 1913. These returns were prepared in accordance with plaintiff’s books of accounting. With greatly diminished expenses plaintiff continued to claim such deductions in its tax returns for 1917 and 1918 and for its tentative return for 1919. In 1920, after having filed the return for the year 1919, and after paying part of the tax for that year, plaintiff asserted that an error had been made in its tax returns for 1914, 1915, and 1916, claiming that the large expenses incurred in those years should have been treated as capital expenditures and spread over a period of years, and contending also that only an aliquot part of such expenses should have been deducted from the gross income for 1914, 1915, and 1916 and subsequent years until the period of ten years had elapsed. Plaintiff raised the further contention that the unamor-tized balance of such expenses should have been treated as a part of its invested capital for excess-profits tax purposes for the years in which excess-profits taxes were imposed. Plaintiff filed amended returns, and claims for refund designed to correct the situation in accordance with those contentions, which claims were disallowed by the Commissioner of Internal [Revenue. The commissioner did, however, determine that plaintiff was entitled to the relief afforded by the special assessment sections 327 and 328 of the revenue acts of 1917 and 1918 with reference to its excess-profits taxes for 1917, 1918, and 1919, which action resulted in a substantial reduction of plaintiff’s tax liability for those years.
The revenue act of 1913, 38 Stat. 114-166, under the pro,visions of which plaintiff paid its taxes for 1914, 1915, and 1916, authorized the taxpayer to deduct “ all the ordinary and necessary expenses paid within the year in the maintenance and operation of its business and property.”
The evidence discloses that the large manufacturers and retailers would not contract to buy coupons until they were assured that plaintiff company .would advertise extensively in order to acquaint the public with the scheme. It was a nation-wide advertising campaign which consisted of newspaper, periodical, and billboard advertising. Premium sta *181 tions were opened and maintained in the larger cities throughout the country. Catalogs and circulars were distributed by mail and by house-to-house canvass. It conducted prize contests for school children and employed the services of expert advertising agents. The essential purpose of this campaign-was to demonstrate to manufacturers and retailers that the coupons of plaintiff would be a valuable means of advertising and increasing their business. This campaign continued from July, 1914, to the end of the year 1916, as the result of which plaintiff procured many large .and profitable contracts. Plaintiff expended in said advertising campaign in 1914, $96,651.75; in 1915, $537,131.87; and in 1916, $96,661.52. By the end of the year 1916 plaintiff had secured contracts which produced in the succeeding years a total of $8,727,276.83. The largest, a contract with William Wrigley & Company, produced alone $6,489,678.16 -and had a life of ten years. After the advertising campaign was discontinued in 1916 a very trifling amount was spent thereafter. The authorized capital stock was reduced in 1916 from $2,000,000 to $500,000 for the reason that more capital was unnecessary after said contracts had been obtained. The unusual and extraordinary purpose of the expense liad been accomplished. These vast sums of money were expended for the sole purpose of procuring contracts from which plaintiff might derive profit. They were not ordinary expenses. 'They were, in a proper sense, capital expenditures, and should have been spread over a period of years in determining plaintiff’s tax liability.
It is, however, the contention of defendant that having elected to charge these expenditures to current expense, and having filed its returns and paid its taxes on that bp.sis, plaintiff, can not now. be permitted to correct its books, or .its returns, so as to obtain the relief sought. In its brief, defendant practically concedes that if plaintiff has kept its books so as to reflect the correct situation with reference to these expenditures, and had made its returns accordingly, such expenditures would have been deductible as capital expenditures, and not as an ordinary expense. The plain meaning of the Government’s contention is that once having *182 charged these expenditures to current expense plaintiff is irrevocably bound by its act in so doing, even though such charge was erroneous. A taxpayer should not be penalized for the erroneous treatment of an item affecting his tax liability, either in the matter of accounting or in his tax returns. Entries in books are not final and conclusive, and may be corrected on a showing of the true facts. In Mitchell Bros. Co. v. Doyle, 225 Fed. 437, 440, the court said, “ Mere bookkeeping entries can not preclude the Government from collecting its revenues. Nor are such entries conclusive upon the taxpayer, when ft is shown, as here, that they represent and indicate ancient, instead of present, actual values. The bookkeeper creates nothing. His methods, figures, and records must yield to proven and established facts.” In affirming the judgment in this case (247 U. S. 179) Mr. Justice Pitney at page 187 used the following language: “ Such books are no more than evidential, being neither indispensable nor conclusive. The decision must rest upon the actual facts, which in the present case are not in dispute.” In appeal of Goodell-Pratt Company, 3 B. T. A. 30, the board thoroughly considered and disapproved the regulations under the provisions of which the commissioner disallowed plaintiff’s claims. In that case the question was whether or not the taxpayer might include in invested capital for the years 1917, 1918, and 1919 the sum of $280,513.26 expended during the years 1909 to 1916, inclusive, for the development of patents, secret processes, methods of manufacture, special machinery, new tools, etc., and charged by the taxpayer to current expense, and deducted from gross income for income-tax purposes during those years. The board held that such expenses were in fact capital expenditures, and that although the taxpayer had for seven years charged them on its books to current expense, it was entitled to a readjustment of its taxes in accordance with the real facts. Again, in appeal of Huning Mercantile Co., 1 B. T. A. 130, the board held, “ Books of account are intended to reflect the true condition of the taxpayer’s affairs and to assist the Government in ascertaining true net income *183 for taxation. When they do not do so they should bind neither the Government nor the taxpayer.”
We are of the opinion that plaintiff is entitled to the relief sought. . The remaining question is to determine what is a fair and equitable method for the amortization, or spiead, of these expenditures. One hundred and eight contracts were procured as a result of the advertising campaign, and they vary in length from one to ten years. The expenditures attributable to the procuring of the contracts, as distinguished from other expenses of plaintiff’s operations, are susceptible of segregation, and have been segregated. It is not possible, however, to allocate to the particular contract the expense involved in procuring such contract. The expenditures, as a whole, contributed to the procuring of all the contracts. Plaintiff has suggested three methods for the spread of these expenditures: (1) To spread the expenditures over the life of the longest contract, i. e., the Wrigley contract, whjch had a life of ten years; (2) to spread them over the average lives of the contracts, i. e., 6.94 years; (3) to assign to the Wrigley contract, the largest, such proportion of the total expenditures as the returns under that contract bear to the total returns; the same method to be followed with the next largest, the Kaufman-Baer contract; and to assign the balance of the expenditures to the remaining contracts, using the average life of such contracts, which is 2.22 years. It will be seen that by this method $543,180.92 ,is to be allocated to the Wrigley contract, and $105,885.33 to the Kaufman-Baer contract, and only the sum of $81,318.89 to the remaining contracts. It is believed that the latter method affords the best means for the fair and equitable amortization of these expenditures, and same is hereby adopted by the court as the proper guide for determining plaintiff’s tax liability herein. See Finding XXXII. It is admitted by defendant, in its brief, that the computation of tax, and dates from which interest should run, are correctly set forth by plaintiff. Plaintiff is entitled to recover, and it is so adjudged and ordered.
Green, Judge; and Booth, Chief Justice, concur.
Gbaham, Judge, took no part in the decision of this case.