WOODS LUMBER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 97474. Promulgated April 8, 1941.

*W. G. Boone, Esq.*, for the petitioner.
*John R. Stivers, Esq.*, for the respondent.

OPINION.

ARNOLD: The Commissioner disallowed the Clarendon mill operating loss of $14,077.10 upon the ground that the Arkansas operations were conducted by a separate and distinct entity for income tax purposes. This determination was predicated on the assumption that the petitioner was the stockholder of the Arkansas company.

For income tax purposes corporations are generally treated as entities separate and distinct from their stockholders. *Burnet* v. *Clark*, 287 U. S. 410; *Dalton* v. *Bowers*, 287 U. S. 404; and *Burnet* v. *Commonwealth Improvement Co.*, 287 U. S. 415. However, where exceptional or peculiar factual situations prevail, form has been disregarded in favor of substance and equity. See *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435; *Southern Pacific Co.* v. *Lowe*, 247 U. S. 330; *Gulf Oil Corporation* v. *Lewellyn*, 248 U. S. 71; *North Jersey Title Insurance Co.* v. *Commissioner*, 84 Fed. (2d) 898; *Munson Steamship Line* v. *Commissioner*, 77 Fed. (2d) 849; *112 West 59th Street Corporation* v. *Helvering*, 68 Fed. (2d) 397; *Mark A. Mayer*, 36 B. T. A. 117; *Kaspare Cohn Co., Ltd.*, 35 B. T. A. 646.

The purpose for taking steps to organize an Arkansas corporation is not disclosed. However, it was treated as existing in name only. It had no property or funds except such as were furnished by petitioner in the ordinary course of operations. It was never formally organized. It never functioned as a corporation. None of its shares of stock was ever issued to petitioner and neither Woods and his two sons nor the petitioner ever paid any money or property to the corporation for its stock. The petitioner conducted the business, consisting of the operation of the sawmill at Memphis, the sawmill at Clarendon, and the river logging equipment as its own prior to the issuance of the Arkansas charter and continued to do so without change thereafter and throughout the year 1935, except that a bookkeeping entry was made, indicating that the petitioner acquired the capital stock of the Arkansas company. Book entries are evidentiary merely and not conclusive. *Helvering*

v. *Midland Mutual Life Insurance Co.*, 300 U. S. 216; *Mitchell Brothers Co.* v. *Doyle*, 225 Fed. 437; affd., 235 Fed. 686; 247 U. S. 179. The petitioner was the actual owner of all the assets listed in both sections of its ledger and the beneficial owner of the small piece of timber taken in the name of the Arkansas company. In our opinion the Arkansas corporation neither functioned as a *de jure* or *de facto* corporation nor operated the Clarendon sawmill and river logging equipment. However, even if it had been fully organized and had acquired title to the business involved, nevertheless the peculiar circumstances disclosed by the evidence bring this case within the exception to the general rule. See *New Colonial Ice Co.* v. *Helvering, supra*, and other cases cited. We therefore conclude that for income tax purposes the operations of the business in Arkansas and Tennessee should not be treated as operations of two separate entities. See *Mark A. Mayer, supra;* and *United States* v. *Jelenko*, 23 Fed. (2d) 511.

The respondent contends that, in the event the Board determines to disregard the separate entity of the Arkansas corporation, the loss alleged to have been sustained from the operations of the Clarendon mill and river logging equipment should be reduced by one-half of the claimed depreciation of $11,214.93. Woods, Sr., testified that in his opinion, based upon his experience, the river logging equipment had a probable useful life of 10 years and that a 10 percent depreciation rate was proper. This is the only evidence in that regard except that petitioner adduced in evidence an agreement as to final determination of tax liability for the year 1928 (Form 866) entered into between petitioner and the Commissioner, with a statement attached showing the Commissioner's computation of petitioner's tax liability for that year. It apears therefrom that a 7½ percent depreciation rate was allowed on a "Saw Mill Plant and Equipment No. 1" and a 10 percent rate on a "Saw Mill Plant and Equipment No. 2" and that a 10 percent rate was allowed on "River Equipment." The petitioner did not acquire the Clarendon mill until 1932. There is not sufficient evidence from which a proper rate of depreciation applicable to the property here involved could be determined. The respondent concedes that a rate of 5 percent is a reasonable allowance for depreciation. In view of the record made we hold that the operating loss of the Clarendon mill and river logging equipment must be reduced by one-half of the depreciation claimed or $5,607.47, the deductible operating loss therefor being $8,469.63.

Section 23 (k) of the Revenue Act of 1934 allows the deduction of "Debts ascertained to be worthless and charged off within the taxable year." The respondent disallowed the bad debt deduction

claimed by petitioner to the extent of $1,219.08, for the reason that such amounts were worthless prior to 1935.

The employee in charge of credits and the collection of retail accounts was of the opinion, based upon his investigations and familiarity with the financial situation of each debtor, that the accounts, excepting the Midwest Hardware Co. account, were not worthless prior to 1935. He knew nothing about the Midwest Hardware Co. account, which apparently was a wholesale account. From the evidence it appears that the petitioner exercised diligence and care in the checking and following up of accounts. It has been held that some latitude and discretion is allowed to the taxpayer in the ascertainment of worthlessness of accounts or debts, provided that he exercises good faith, and that "there is no absolute duty on the taxpayer to ascertain worthlessness at his peril, during the same year when the debt in fact became uncollectible." *Commissioner* v. *MacDonald Engineering Co.*, 102 Fed. (2d) 942, affirming 35 B. T. A. 3. It appears that petitioner received $100 in 1937 on the Davis account and $50 on the Lipscombe account in a year subsequent to 1935. The right to a bad debt deduction is not affected by the fact that recoveries are made in a later year if the debt was ascertained to be worthless and charged off in the taxable year. *Fort Worth Warehouse & Storage Co.*, 6 B. T. A. 536; *Ed. S. Hughes Co.*, 6 B. T. A. 949; *Continental Trust Co.*, 7 B. T. A. 539; and *Iberville Wholesale Grocery Co., Ltd.*, 17 B. T. A. 235. Here the debts, with one exception as to which there is no evidence, were ascertained to be worthless and were charged off in the taxable year. We therefore conclude that, with the exception of the Midwest Hardware Co. account, the accounts involved herein, totaling $1,120.93, are deductible as bad debts in the taxable year.

*Decision will be entered under Rule 50.*