Cherrydale Cement Block Co., Inc. v. Commissioner.
Cherrydale Cement Block Co. v. Commissioner
Docket No. 83285.
United States Tax Court
T.C. Memo 1962-262; 1962 Tax Ct. Memo LEXIS 46; 21 T.C.M. (CCH) 1408; T.C.M. (RIA) 62262; November 7, 1962
*46 BAD DEBT - Sec. 166(a)(1), I.R.C. 1954 - Held, that an indebtedness owing to petitioner became wholly worthless in 1955, and the right to a bad debt deduction in that year is not precluded by the fact of partial recoupment in a subsequent year. Dewey R. Roark, Jr., Esq., Munsey Bldg. Washington, D.C. for the petitioner. W. Ralph Musgrove, Esq., for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: The respondent determined deficiencies in the petitioner's income taxes in the amounts of $4,440.73 and $575.70 for the calendar years ended December 31, 1955 and 1956, respectively. At time of trial the petitioner waived its *47 assignment of error involving certain claimed depreciation for each of the years. The sole issue remaining is whether respondent erred in disallowing a deduction of $15,931.18 claimed as a business bad debt alleged to have become wholly worthless in 1955. Findings of Fact Some of the facts have been stipulated and they are found acordingly. The petitioner, a Virginia corporation having its principal place of business in Arlington, Virginia, was engaged in the business of manufacturing and selling concrete blocks and builders' supplies in the year in question. It kept its books and filed its Federal income tax returns on the accrual basis and by calendar years, and the return for 1955 was filed with the district director of internal revenue for the district of Virginia. In the ordinary course of its business operations, the petitioner sold merchandise, on credit, to the Jackson Masonry Contractors, Inc., which was engaged in the business of building homes in northern Virginia. At the end of 1953, Jackson executed its promissory note to petitioner's order to evidence the balance then owing on the account in excess of $17,000. In the early part of 1954, Jackson became involved *48 in financial difficulties and was unable to meet its obligations to its general creditors or protect itself against foreclosure of certain deeds of trust on its real estate and chattel deeds of trust on its equipment. It lacked funds to finish construction of houses in various stages of completion. Jackson secured a commitment from one Goode to advance the sum of $75,000 to finance its operations, and Jackson's general creditors agreed to freeze or subordinate their existing claims in order to assure completion of the unfinished houses. About March 25, 1954, a "Creditor's Agreement" was entered into between a group of general creditors and Jackson, and also its officers and sole stockholders, Raymon E. and Wallace N. Hansborough, individually. The creditors, who were parties to the agreement, agreed not to take any action, file any suits at law or equity, or attempt collection of the accounts listed in the agreement for a period of 18 months from February 12, 1954. In an agreement entered into shortly thereafter, to which the above-mentioned "Creditor's Agreement" was attached and in which it was incorporated, Goode agreed to lend $75,000 to Jackson and the two Hansborough men. *49 This agreement set forth the purposes for which the loan of $75,000 was to be used, and, also, the character of the collateral security to be transferred, assigned and given to Goode. This loan was secured by collateral referred to by the agreement, including certain deeds of trust on real property owned by the Hansboroughs individually. Goode subsequently made a $40,000 loan to Jackson secured by a deed of trust on certain lots owned by it in Hansborough Subdivision and a chattel mortgage. This loan was not secured by property owned by the Hansboroughs, individually. Jackson's financial problems continued; the efforts to solve them were not successful, and in November of 1954 it went into voluntary receivership. The balance due petitioner on the Jackson account on December 31, 1954, exceeded $24,000. Of this amount $17,309.32 was evidenced by the promissory note referred to above, which was endorsed by the Hansborough men and by their respective wives. In April of 1955 the Jackson account was turned over to the petitioner's lawyer for collection. An investigation of Jackson and the Hansboroughs individually was made. This included personal conversations with the latter, examination *50 of tax and land records, and appraisals of their real properties. Jackson was insolvent and in receivership, and its assets were subject to various deeds of trust as security for the claims of Goode which had priority over the unsecured claims of general creditors, including the petitioner. Both of the Hansboroughs were out of work and neither had any physical assets that could be located, other than the above-mentioned real estate subject to encumbrances in excess of the appraised value. Petitioner's lawyer advised that the Jackson account was uncollectible and that any judgment against the Hansboroughs as endorsers on the note would be uncollectible also. Nevertheless, pursuant to its usual practice, the petitioner instructed its lawyer to reduce the note to judgment. This was done and the petitioner obtained a judgment against each of the Hansboroughs on October 12, 1955, in the amount of $17,309.32 plus interest, lawyer's fees, and costs. No judgment was obtained against the Jackson corporation. The judgment was docketed in counties where the defendants owned encumbered real property. Writ of execution, issued to the sheriff of Fairfax County where the defendants lived, was returned *51 "No Property" on December 19, 1955. This confirmed the earlier investigation. Upon advice of its lawyer that the judgment was uncollectible, the petitioner did not then file a creditor's suit to enforce its judgment lien against the encumbered real estate owned by the individual judgment debtors. The petitioner claimed as a deduction a bad debt charge-off in the amount of $15,931.18 with respect to the Jackson account in its Federal income tax return for 1955. Such amount constituted the balance remaining in that account, for Federal income tax purposes, after a partial bad debt charge-off in a prior year not before the Court. Subsequently, certain events occurred which indicated that eventual recovery of the debt, or part of it, might follow. In 1957, pursuant to court decree in the Jackson receivership proceeding, the receiver made a distribution in substantial satisfaction of Goode's original $75,000 loan which was secured by deeds of trust on the Hansborough properties. Petitioner's lawyer then advised that this should result in the petitioner's judgment lien taking priority over Goode's remaining unsatisfied claims, with respect to the Hansborough properties. At or about the *52 same time, Goode threatened to institute foreclosure proceedings under his deeds of trust on the Jackson and Hansborough properties. Promptly thereafter, the petitioner filed suit in the Chancery Court of Fairfax County, Virginia, to enjoin the threatened foreclosure and to determine the priority of its judgment liens in relation to the liens of other Hansborough creditors. Answers were filed by several defendants, including Goode, who denied various allegations of the complaint and alleged that although the court in the receivership had fixed the total indebtedness due from Jackson, he had been paid only a portion of this total, leaving a balance due and owing of $27,717.48 with interest; Goode also claimed his deeds of trust were valid and subsisting liens on the Hansborough properties. The court determined the priority of various claims and held that under the decree in the receivership proceeding Goode was entitled to receive only the further sum of $7,458.93 on account of the original $75,000 indebtedness, and that Goode's lien for such sum was superior to the judgment lien of the petitioner. The court further held, however, that Goode's additional $40,000 loan to Jackson *53 was secured only by a deed of trust on its lots in Hansborough Subdivision, and that without having reduced such indebtedness to judgment against the Hansboroughs (as petitioner had done) Goode could not impress his $40,000 lien on their real property involved in the creditor's suit. Pursuant to an order of the court entered January 3, 1958, the defendants' real estate was sold, and after payment of certain costs of the proceedings, real estate taxes, and superior liens, the remaining balance of $17,870.40 was paid to the petitioner herein, of which $15,255.50 was applied to its judgment and the remainder to its court costs and lawyer's fees. This was more than two years after the end of the taxable year in question. The Court finds that the amount of $15,931.18, the remaining balance, for tax purposes, of the petitioner's debt due from Jackson became uncollectible and worthless during the taxable year 1955. All of the surrounding facts and circumstances existing then establish that this debt was worthless and uncollectible and that legal action to enforce payment would not result in the satisfaction of execution on the judgment. The petitioner's partial collection over two years *54 later, in 1958, resulting from a creditor's suit on a judgment lien against the endorsers on the Jackson note was due to the happening of events subsequent to the taxable year 1955. Opinion Section 166(a)(1) of the Internal Revenue Code of 1954 provides that "There shall be allowed as a deduction any debt which becomes worthless within the taxable year." Income Tax Regulations, section 1.166-2(a) and (b), promulgated under the 1954 Code, with respect to evidence of worthlessness, provide that in determining whether a debt is worthless, consideration shall be given to all pertinent evidence, including the value of collateral, if any, securing the debt and the financial condition of the debtor, and, further, that legal action is not required where the surrounding circumstances indicate that a debt is worthless and uncollectible and that such action to enforce payment would in all probability not result in the satisfaction of execution on a judgment. There is no pat or standard test for the determination of worthlessness during a given taxable year. In W. A. Dallmeyer, 14 T.C. 1282, (Acq., 1950-2 C.B. 2), *55 involving a claimed bad debt deduction, we said (pp. 1291-1292): It is well established that there is no fixed formula for determining the year in which a deductible loss was sustained. When and/or whether a debt became worthless is a question of fact, the answer to which does not lie in any stereotyped legal test, but in an examination of all the circumstances. Lucas v. American Code Co., 280 U.S. 445, Boehm v. Commissioner, 326 U.S. 287. The date of worthlessness is fixed by identifiable events which form the basis of reasonable grounds for abandoning any hope for the future. Joyce v. Gentsch, 141 Fed. (2d) 891, United States v. White Dental Mfg. Co., 274 U.S. 398. In carrying its burden of establishing that the claimed bad debt became worthless in the taxable year 1955, the petitioner is not required to prove worthlessness beyond imaginable preadventure that there is no possibility of an eventual recoupment. Clark v. Welch, 140 F. 2d 271 (C.A. 1, 1944). It is undisputed and we have found that the petitioner sued the individuals liable on the Jackson account early in 1955 and obtained judgment against them in *56 October of that year. A writ of execution was returned "No Property" that same year. On advice of counsel that its judgment was uncollectible, petitioner did not then proceed further in an effort to enforce its judgment lien. The corporate debtor was insolvent and in receivership and its assets encumbered as security for other claims. An investigation disclosed that the endorsers of the debtor's note were out of work and had no physical assets other than their homes and a farm subject to encumbrances in excess of the appraised value thereof. These unsuccessful efforts to collect are relevant to establish the time of actual worthlessness. Smyth v. Barneson, 181 F. 2d 143 (C.A. 9, 1950). Here they all occurred prior to the end of 1955. No legal action against the corporate debtor was required under such surrounding circumstances to establish worthlessness that year. We agree with the petitioner's contention and have found as an ultimate fact that the debt in the amount of $15,931.18 became worthless during the taxable year 1955. The respondent's argument against worthlessness in 1955 is based on subsequent events and ignores the factual situation as it existed in that *57 year. Neither the petitioner nor this Court is compelled to view the facts with the perfect vision of hindsight, which is always 20/20. In 1955 the events which subsequently occurred could not have been reasonably ascertained or foreseen during the taxable year. It required a suit by petitioner in 1957 based upon those subsequent events to establish that petitioner's judgment lien against the individual defendants had moved up, so to speak, in its relative position of priority so as to provide partial recovery in 1958 of the previously worthless debt. This was only ascertainable several years later because of events which occurred after 1955. The petitioner's right to the claimed deduction for the year 1955 is not precluded by the fact of partial recoupment in a subsequent year. United States v. White Dental Mfg. Co., 274 U.S. 398 (1927); Woods Lumber Co., 44 B.T.A. 88, 94. Cf. E. C. Olson, 10 T.C. 458. The respondent's regulations themselves recognize that bad debts allowed as deductions from gross income in one year may, nevertheless, be collected in subsequent years, and they are accordingly required to be included in gross income for the *58 taxable year of recovery. Income Tax Regulations, section 1.166-1(f). We find, and accordingly hold, that petitioner was entitled to and correctly claimed a business bad debt deduction of $15,931.18 for the Jackson account in its 1955 income tax return. Decision will be entered under Rule 50.